Gunnett, Appellant, *v.* Trout.

Argued January 4, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Frank B. Boyle,* with him *Thomas H. Reed, Arthur Markowitz, Budding & Yost,* and *Markowitz & Liverant,* for appellant.

*Donald E. Albright,* with him *John F. Rauhauser, Edwin M. Buchen, C. A. Lingg* and *Lingg & Albright,* for appellees.

OPINION BY MR. JUSTICE JONES, March 14, 1955:

Pursuant to Section 5 of the Act of July 2, 1935, P. L. 599, as amended, 4 PS §63, a petition in due form was filed with the commissioners of York County seeking a referendum on the question whether the showing of motion pictures on Sunday in the Borough of Hanover should be permitted. The petition was approved and official ballots stating the statutorily prescribed question were made available to the voters in the five election districts (being the five wards) of the borough. The referendum was held at the time of the municipal election on November 3, 1953.

Section 4 of the Act of 1935, supra, provides, inter alia, that "Such [referendum] election shall be governed by the election laws of the Commonwealth, and all penalties provided by said laws shall apply to such elections."

As shown by the general return sheets of the referendum, more negative than affirmative votes were cast in answer to the submitted question. Subsequently, three qualified electors in each of the five wards of the borough separately petitioned the court of common pleas of the county to open the ballot boxes in the respective five election districts and have the votes on the referendum recounted. It is obvious from the content of these petitions (viz., three petitioners, general instead of specific allegations of fraud and the deposit of $50 with each petition at the time of filing with the

prothonotary) that the opening of the ballot boxes for a recount was sought under the provisions of Section 1701 of the Pennsylvania Election Code of 1937, P. L. 1333, 25 PS §3261.

The court granted the petitions to open the boxes in the First, Second, Fourth and Fifth Wards and appointed a board to recount, under the court's supervision, the votes cast in the referendum. The petition relative to the Third Ward was refused in the evidently mistaken belief that the petition had been filed too late. However, that is of no present moment as will soon appear. The referendum votes in the indicated four election districts, as recounted by the board, plus the vote in the Third Ward, as originally canvassed and computed by the county election board, produced a total of 2226 votes against to 2022 votes for. The court thereafter duly certified this result to the county election board whose statutory duty it was to determine the final result and to notify the acting executive officer of the municipality accordingly.

Thereupon, each set of petitioners in the five petitions for the opening and recount separately appealed to this court, ostensibly from the certification of the lower court, sitting as a recount board, to the county commissioners, sitting as the county election board. Those appeals, which are at Nos. 24, 25, 26, 27 and 28, May Term, 1954, will be quashed without extended discussion. The recount, as certified by the court, was but a step in the course leading to the ultimate result, viz., the certification by the county election board to the acting chief executive officer of the municipality of the result of the vote on the referendum question. The way to impeach the final certificate of a county election board is by a direct contest as provided by statute. But, unlike the case of a certificate of election to a successful candidate, there is no provision in

the election laws of the Commonwealth for the contest of a county election board's certification of the results of a referendum. These five appeals are obvious anomalies and, consequently, of no efficacy.

On the same day that the above-mentioned appeals were taken, Clifford Gunnett, a qualified elector of the Second Ward of the Borough of Hanover, instituted a suit in equity, allegedly in behalf of himself and of all other citizens and electors of the borough, against the county commissioners, sitting as the county election board, the burgess of Hanover, as the acting chief executive officer of the borough, and the prothonotary of York County. Gunnett set forth in his bill of complaint the facts relative to the holding of the referendum at the municipal election in Hanover on November 3, 1953, and, in general language, averred "frauds, errors and mistakes" on the part of election officers in the conduct of the referendum. He prayed a decree (1) enjoining and restraining the county board of elections from certifying to the acting chief executive officer of the borough the results of their computation of the votes cast in the referendum, (2) declaring the referendum election null and void and setting it aside as invalid and (3) ordering and directing that a new referendum on the question be held at the next election in the borough.

On praecipe of the plaintiff, a judgment by default was entered for the failure of the defendants to plead within the time required by Rule 1511 (a) of the Rules of Civil Procedure, and the plaintiff subsequently moved the Court to enter a definitive decree on the basis of the default judgment. The court declined to enter such a decree forthwith and directed that the plaintiff's motion be filed and the matter placed on the argument list with notice also to counsel for the intervening Hanover Ministerium Association. After

508

a hearing and argument on the matter, the court entered a final decree refusing the plaintiff's motion and dismissing the bill of complaint. The plaintiff brought this appeal at No. 3, May Term, 1955.

The learned chancellor disposed of the matter on the merits and, if the merits were material to the fundamental question inherent in the suit, it could be said that the findings and conclusions of the court below were competently made and readily justified dismissal of the suit. But, we do not get to the merits. Equity is without jurisdiction to hear and dispose of an election contest and, as the chancellor correctly observed at the outset of his adjudication, "the plaintiff is endeavoring to use a bill in equity in lieu of an election contest."

The election laws of Pennsylvania, to which a referendum under the Act of 1935, supra, is expressly made subject, provide for the contest of a nomination or an election of a candidate for public office under any one of five specified categories: see Section 1711 of the Pennsylvania Election Code of 1937, 25 PS §3291. Notably, however, a contest of the certified result of a referendum is not to be found among any of those categories. So much was recognized by this court in *Greene Township Malt Beverage License Referendum Contest*, 331 Pa. 536, 1 A. 2d 670, which was concerned with an effort to *contest* the results of malt beverage and liquor license referenda. In that case, the lower court dismissed the petition on the ground that there was no provision in the election laws for such a contest. In affirming, we said (p. 539),—"Contests are limited to the five classes of public officials [named in the Election Code], and it is clear that a referendum upon the granting of liquor or malt beverage licenses is not within the classes so enumerated." And, in concluding, we added that "the court [was] without juris-

diction in the premises . . . ." It was further said in the *Greene Township* case, supra, with special reference to the decision in *Kittanning Country Club's Liquor License Case,* 330 Pa. 311, 198 A. 91, that "We endeavored in that case to make clear the ruling that a contest of a referendum was not permissible under the general election laws of the Commonwealth, and it was not our intention to hold or infer otherwise."

Since a court of law is without power under the election laws of the Commonwealth to entertain a contest of the result of a referendum, on what ground can it be said that equity's jurisdiction will attach for such purpose? The laws providing for the holding and conduct of elections, to which referenda are expressly made subject, are solely matters of statutory creation. "The jurisdiction of the courts in election contests is not of common law origin but is founded entirely upon statute, and therefore it cannot be extended beyond the limits defined by Acts of Assembly": *Greene Township Malt Beverage License Referendum Contest,* supra. How, then, can it be argued that the absence of a statutory provision for the contest of the result of a referendum operates to confer what only a statute can ordain and which no statute has to date ordained? "It is only in contested election cases that the [Court of Quarter Sessions] has jurisdiction, and as this jurisdiction is not one of common law it cannot be extended by implication beyond the prescriptions of the act in which it originates": *Auchenbach v. Seibert,* 120 Pa. 159, 170, 13 A. 558. The absence of a remedy which only a statute can confer does not empower equity to assume jurisdiction and supply the deficiency without a statute.

No case in this State has been cited, and we know of none, where equity has intervened to declare an election invalid on the ground that, because of fraud or

other wrongdoing on the part of election officials or others in the casting, computation or return of the votes at an election, the will of the electorate was thwarted and the election thereby rendered a nullity. Such matters are peculiarly for an election contest. The statement in *Winograd v. Coombs,* 342 Pa. 268, 20 A. 2d 315, indicating to opposite effect, was not only a patent dictum but the two, and only, cases cited and quoted from (*Contested Election of E. R. Wheelock,* 82 Pa. 297, and *Fish's Election,* 273 Pa. 410, 117 A. 85) in support of the gratuity were election *contests.* In the *Winograd* case, just as here, the plaintiff sued in equity to have a referendum election on Sunday motion pictures declared void because of alleged frauds and errors in the conduct and return of the election. The lower court dismissed the bill and this court affirmed. And, while the matter was treated on its merits, equity did not grant the relief sought and the question of equity's jurisdiction was not raised.

Equity will, of course, intervene to declare null and void a referendum election where some positive and material requirement of the law has been disregarded or ignored. For example, where the ballots to be used at an election to ascertain whether the indebtedness of a borough shall be increased must, by statute, be official ballots furnished by the county commissioners and in the form prescribed by statute, ballots prepared and furnished by the authorities of the borough involved invalidated the election and equity so decreed: see *McLaughlin v. Summit Hill Borough,* 224 Pa. 425, 73 A. 975. Compare *Oncken v. Ewing,* 336 Pa. 43, 8 A. 2d 402. Similarly, where the ballots used at a referendum on liquor licenses varied from the form prescribed by the statute, it was held that "This constitutes so material a deviation from the statutory form prescribed for use in elections of this character as to cause the

ballot to be lacking in matters essential to the free expression of the will of the voters, thereby rendering the election a nullity": *Kittanning Country Club's Liquor License Case,* supra, at p. 318. It was also pertinently recognized in that case (p. 319) that "Here there is no question concerning the number of votes cast, or of a fraud or irregularity in the conduct of the election. In consequence the statutes upon which the intervenors rely are without application because this proceeding is not an election contest . . . ." *Hellertown Borough Referendum Case,* 354 Pa. 255, 47 A. 2d 273, is an instance of equity's jurisdiction to hear and determine a suit to have declared invalid a referendum vote on Sunday motion pictures on the ground that the petitions for the referendum filed with the county commissioners did not comply with the requirements of the election laws of the Commonwealth. Because of the legal deficiency averred, equity had jurisdiction even though the complainants might be unable to make out a case due to their failure to pursue timely statutory procedures, precedently available, for questioning the sufficiency of the referendum petitions.

The bill in the instant case avers matter cognizable only in a contest proceeding after an election and, for such a proceeding, there is no statutory provision with respect to referenda.

The appeals at Nos. 24, 25, 26, 27 and 28, May Term, 1954, are quashed.

The decree appealed from at No. 3, May Term, 1955, is affirmed, at the appellant's costs, for the reason that equity is without jurisdiction of the subject-matter set forth in the complaint.