## Bensalem Township Supervisor Election Contest

434

*John S. Neal, Jr.*, for petitioner.
*Alfred Francis Shea*, contra.

SATTERTHWAITE, J., July 5, 1961.—Petitioners have made application to this court for an election contest pursuant to section 1751, et seq., of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, 25 PS §3431, et seq., seeking to challenge and set aside the nomination at the primary election held May 16, 1961, of Frank B. Puzycki as the Democratic candidate for the office of supervisor of Bensalem Township. After alleging that the return of said election was that Puzycki had received 1,513 votes as against 1,415 votes for John C. Chrostek, the only other candidate, petitioners aver that the return of such majority of 98 votes for Puzycki was invalid and an improper return of his nomination, for the reason that he was not then, nor at any time during the year 1961, a resident of the township, having removed his legal residence to New Jersey in 1960, and, hence, was not eligible to be a registered elector or to hold public office therein. The prayer of the petition was that the court, after notice and hearing, adjudge the return to be illegal and further declare that Chrostek had been duly nominated. The matter is now before the court on respondent's motion and rule to show cause why the

petition for contest should not be quashed for variously stated reasons, the central gist of which is that the petition fails to state any irregularities or illegalities at the polling place or in the conduct of the primary election or the return thereof, but that it is rather concerned with respondent's alleged personal disqualification as a nominee which is not the proper subject of an election contest.

It is elementary that the election laws are solely matters of statute and the the jurisdiction of the courts thereunder is not of common-law origin and, therefore, cannot be extended beyond the limits of the appropriate legislation: Gunnett v. Trout, 380 Pa. 504, 509, and cases cited. Article 8, sec. 17, of the Pennsylvania Constitution, as implemented by section 1751 of the Pennsylvania Election Code, supra, confers jurisdiction upon this court to try and determine this matter in this proceeding and at this time only if it properly be classed an election contest. We believe that it is not within this category, that we therefore have no jurisdiction, and that the motion to quash accordingly should be granted.

The Pennsylvania Election Code does not define the phrase "election contest", yet we believe that the term does have a specialized, technical and historically recognized connotation as used in the code, as disclosed by both judicial precedent and a proper construction of the applicable statutory language in context. Section 1756 of the code, 25 PS §3456, requires the petition for contest to specify "wherein it is claimed that *the primary or election is illegal*"; section 1757, 25 PS §3457, prescribes the content of the affidavit thereto that according to the affiants' knowledge and belief "*the primary or election was illegal* and the *return* thereof *not correct*"; section 1765, 25 PS §3465, authorizes the compulsory attendance of *election* officers and production of *election* paraphernalia and docu-

ments; section 1772, 25 PS §3472, details the consequences of the special situation where the *ballots or ballot labels* are so defective "as to be calculated *to mislead the voters*" (Italics supplied).

In short, the legislative intent is implicit to treat in this connection of matters, pertaining only to the election process itself, such as the conduct of the balloting according to law, the tabulation of the results, and the return thereof. In none of the portions of the code relating to contests is reference made to questions of eligibility or qualification of candidates, matters which inherently are factually unrelated to, and logically independent of, the bare mechanics of accurately and honestly ascertaining and recording the will of the electorate.

General pronouncements of the courts have consistently conveyed this same interpretation. From Election Cases, 65 Pa. 20, 29, to Miller Election Contest Case, 351 Pa. 469, 471, the following characterization by Justice Agnew in the former (or a paraphrase thereof) has frequently been expressed (page 29):

"The contest of an election is a remedy given to the people, by petition for redress, when their suffrages [expression of their choice of a public officer] have been thwarted [frustrated] by fraud or mistake."

In Birmingham Township Election Contest Case, 393 Pa. 396, 401, it was described as ". . . a method to insure the honesty and validity of elections", and the following quotation from Kittanning Country Club's Liquor License Case, 330 Pa. 311, 319, depicts the limited and restricted nature of the remedy:

"Here there is no question concerning the number of votes cast, or of a fraud or irregularity in the conduct of the election. In consequence the statutes upon which the intervenors rely are without application because this proceeding is not an election contest, within the meaning of that term as used in statutes."

We have neither found nor been referred to any case exactly in point where the qualifications of a candidate nominated for municipal office were attempted to be challenged in a proceeding to contest the primary election. Nevertheless, we believe that the rationale of certain decisions in somewhat analogous cases, both appellate and lower court, point to the proper disposition of the instant proceedings, notwithstanding that they all may factually be distinguishable.

In re Contested Election of McNeill, 111 Pa. 235, was concerned with the possible conflict between article 2, sec. 9, of the Constitution of Pennsylvania, which provides that each house of the General Assembly ". . . shall judge of the election and qualifications of its members", and article 8, sec. 17, which provides for "The trial and determination of contested election" by the courts. The merits of the election contest in the lower court pertained to the propriety of votes cast in a general election for the office of State senator in particular election districts, and are of no present relevancy. The Supreme Court quashed its writ of certiorari issued to review the lower court's decision, holding that it was a useless gesture for it either to agree or disagree therewith since, under article 2, sec. 9, it was advisory only insofar as the senate was concerned. The present significance of the Supreme Court's opinion lies in its analysis of the Act of May 19, 1874, P. L. 208, which was the ancestor legislation from which the election contest provisions of the present Pennsylvania Election Code of June 3, 1937, were derived. The court noted that the sections of the Act of May 19, 1874, pertaining to election contests for members of the legislature, did not authorize the court to decree which claimant be entitled to the office, but rather that tribunal was to determine only which candidate received the greatest number of legal votes and should receive the certificate of election; it also

pointed out the contrast between these provisions and those of other sections of the Act of May 19, 1874, pertaining to different classes of contests, which purported to give the court power to determine not only who received the largest number of votes cast, but also who should be entitled to the office.

This same observation may be made with respect to the several provisions of the Pennsylvania Election Code of June 3, 1937. Sections 1732, 1739 and 1745, 25 PS §3352, §3379 and §3405, which provide for the judicial disposition of election contests of the second, third and fourth classes respectively, each specify that the designated courts shall "decide which of the candidates voted for received the greatest number of legal votes, *and is entitled to the nomination or office*" (Italics supplied).

However, the instant case, if properly an election contest at all, would be of the *fifth* class (section 1711, 25 PS §3291), and there is no comparable specification of the purported scope of the court's decision in the section relating to contests of that class. See section 1751, et seq., 25 PS §3431, et seq.

Auchenbach v. Seibert, 120 Pa. 159, 170, is most persuasive of the result that we feel compelled to enter herein. That was a contest of the election of a councilman of the City of Reading on the sole ground that he was not a resident of the ward he was to represent, as allegedly required by law. An applicable section (section 4, art. VIII) of the Act of May 24, 1887, P. L. 204, relating to the government of such a city, provided that the city council "shall judge of the qualifications of its members, and contested elections shall be determined by the courts of law." The Berks County court held that it had jurisdiction to determine the matter, squarely deciding that the term "contested election" as used in article 8, sec. 17, of the Pennsyl-

vania Constitution, did include the question of "qualifications" of the candidates and hence would override the purported grant to city council of the right of determination of that subject under the Act of May 24, 1887. The councilman appealed from an adverse decision on the merits, and the Supreme Court peremptorily reversed and vacated the proceedings in a terse and unequivocal one paragraph opinion which left no doubt about the basis therefor. The relevant part thereof is as follows (p. 170) :

"It is very clear that the Court of Quarter Sessions acted ultra vires in entering judgment of ouster against the respondent in this case. It had no jurisdiction to pronounce upon the qualifications of Daniel Auchenbach as a councilman. The act of assembly vests that power not in the court, but in that branch of the municipal council to which the member may be elected. *It is only in contested election cases that the court has jurisdiction,* and as this jurisdiction is not one of common law it cannot be extended by implication beyond the prescriptions of the act in which it originates." (Italics supplied.)

The Supreme Court in the Auchenbach case thus definitely and categorically ruled that matters pertaining to the personal eligibility of a candidate are not proper subjects of an election contest, at least unless so provided by statute. Several lower court decisions have been rendered upon the same considerations, holding that where the regularity of the election itself was not controverted, the remedy for alleged disqualification of the elected candidate was not by election contest, but rather by quo warranto or other post-election procedures: Murphy's Contested Election, 8 Dist. R. 445; Schaffer's Election, 27 Pa. C. C. 443; In re Contested Election of Anderson, 22 Luz. 129; In re Contest of Election of Justice of the Peace of Frank-

lin Township, 34 Westmoreland 173; Altshuler Election, 66 D. & C. 476.

We are aware of Petition of Roberts' Nomination, 2 D. & C. 236, where the Dauphin County court held that it had jurisdiction to determine whether or not one allegedly disqualified by nonresidence should have his name placed upon the ballot, without awaiting the ultimate disposition of the eligibility problem on quo warranto or other appropriate proceedings after election. We have no quarrel with the desirability of such a determination in limine, but we believe that the question is one which must be addressed to the Legislature. The foregoing precedents demonstrate, however, that we simply do not have the authority to reach the question in this proceeding, and Roberts' Petition does not militate against this conclusion in the least. That case arose in a proceeding to set aside a nomination petition under a statutory provision, since replaced and supplied by sections 976 and 977 of the Pennsylvania Election Code, 25 PS §§2936, 2937, which differed materially from those necessarily relied upon in the instant proceedings, and which expressly provided for setting aside a nomination petition on timely application if it contain material error, e.g., a falsification of the candidate's statement of residence and eligibility. Parenthetically, it should be noted, without indicating any expression of our view of the possible merits thereof, that petitioners in the instant case would have had a far stronger position had they proceeded under section 977 within the deadline therein fixed.

One final matter requires mention. As already noted, the within petition contesting Puzycki's nomination at the primary election also requests us to declare that his alleged disqualification legally resulted in the nomination of Chrostek, the unsuccessful candidate. Even if petitioners had succeeded in their contest of

Puzycki's nomination, however, we could not make the further ruling sought; the same would be contrary to the precedents. Where the candidate who receives the largest number of votes is disqualified, the election does not go to the candidate receiving the next highest number of votes: Commonwealth ex rel. McLaughlin v. Cluley, 56 Pa. 270; Schaffer's Election, supra; In re Contest of Election of Justice of the Peace of Franklin Township, supra. Compare Derringe v. Donovan, 308 Pa. 469, and McLane's Appeal, 345 Pa. 228, holding in the analogous situation of the death of a candidate prior to election that if his name receives the plurality of votes, a vacancy occurs, and the office does not go to the runner-up.

### Order

And now, July 5, 1961, for the reasons stated in the foregoing opinion, respondent's motion of June 13, 1961, to quash the within petition for election contest is granted and the rule granted thereon made absolute. Said petition is hereby quashed, costs to be paid by petitioners.