James H. Reese, et al., Appellants, *v.* County Board of Elections of Lancaster County and Commissioners of Lancaster County, Appellees.
Nancy L. McCall, Appellant, *v.* Lancaster County Board of Commissioners, et al.

Argued May 7, 1973, before President Judge BowMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. (No. 656 C.D. 1973 submitted on briefs, May 22, 1973.)

*William H. Naugle,* with him *Naugle & Sullivan,* for appellants.

*John B. Rengier,* with him *Rengier, Musser & Stengel, S. R. Zimmerman, III,* and *Geisenberger, Zimmerman, Pfannebecker & Gibbel,* for appellees.

OPINION BY PRESIDENT JUDGE BOWMAN, July 25, 1973:

Before us are two appeals from orders of the Court of Common Pleas of Lancaster County in which it (1) dismissed a petition of twenty-eight voters who sought to set aside a referendum election favorable to the creation of a home rule study commission for county government and the election of eleven members to such a commission and (2) sustained preliminary objections to a complaint in equity by another voter raising substantially the same issues and seeking identical relief.[1] The referendum question and the election of commission members for such a study is provided for by the Home Rule Charter and Optional Plans Law, Act of

---

[1] The appeal to No. 1237 C.D. 1972 is referred to as an election contest proceedings by the lower court and was docketed below to its Equity Docket No. 15, Page 136. On appeal, it was argued before this Court en banc. The appeal to No. 656 C.D. 1973 is a complaint in equity and was docketed below to Equity Docket No. 15, Page 172. On appeal, this Court ordered the appeal to be submitted on briefs so that the appeals could be consolidated for prompt disposition.

April 13, 1972, P. L.    , Act No. 62, 53 P.S. §1-101 et seq. (hereinafter referred to as HRCL).

The initial pleading in each of these cases alleges various acts of commission and omission on the part of the county commissioners, county and local election officials and others pertaining to the presentation to the electorate of the referendum question; the election of study commission members incident thereto and the conduct of the election itself; all of which is asserted to violate various provisions of the HRCL and the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, 25 P.S. §2600 et seq., incorporated by reference into the first mentioned statute.

The issues raised in the election contest proceedings were never joined. The petition was filed November 27, 1972; the lower court by order dated November 28, 1972, dismissed the petition not only without the benefit of an answer or other pleading in response thereto, but also apparently without oral argument or submission of briefs.

With one exception, the substantive issues raised by the complaint in equity were never reached. It was filed January 31, 1973; preliminary objections raising a question of jurisdiction and in the nature of a demurrer were filed February 20, 1973, which objections were sustained and the complaint dismissed after argument by order dated April 19, 1973.

In the election contest proceedings the lower court concluded that a referendum question contest was not among the category of election contests subject to judicial review under the Pennsylvania Election Code, citing *Gunnett v. Trout*, 380 Pa. 504, 112 A. 2d 333 (1955), and *Greene Township Malt Beverage License Referendum Contest*, 331 Pa. 536, 1 A. 2d 670 (1938). As to the issues raised concerning the election of members to the study commission, the lower court concluded that such officeholders were not public officers and hence

not within the scope of election contests recognized by the Pennsylvania Election Code.

In the equity proceedings the lower court concluded that equity had no jurisdiction over the cause of action asserted with the possible exception of an issue raised as to alleged noncompliance by election officials with Section 202 of HRCL, 53 P.S. §1-202, which section was held to be directory rather than mandatory. This section provides, "Each voter shall be instructed to vote on the question [i.e., should a government study commission be elected] and, regardless of the manner of his vote on the question, to vote for the designated number of members of a government study commission who shall serve if the question is or has been determined in the affirmative." The averment of the complaint in equity (and also in the election contest petition) supporting the legal issue raised as to the directory or mandatory nature of this statutory provision asserted that the election officials gave no such notice by any means or method whatsoever and also failed to correct or speak out against "contrary instructions" contained in news stories.

Thus, with the exception of this one issue decided by the lower court in the equity proceedings, it has effectively barred the voters of Lancaster County from contesting the procedure by which the referendum question was put to the electorate or the result thereof, as well as barring them from contesting the procedure by which the government study commission members were elected or the result thereof.

Considering first the mandatory or directory nature of the instruction required by Section 202 to be given to the voters with respect to the election of study commission members regardless of the individual voter's view or vote upon the referendum question itself, we are of the opinion that the provision is mandatory. In reaching the contrary conclusion, the lower court ob-

served that the absence of a provision prescribing the manner or method of how such instructions were to be given and the fact that all voters were entitled to vote for commission members dictate such a result. We disagree.

Article II-A of the Home Rule Charter and Optional Plans Law establishes a detailed procedure for simultaneously presenting to the electors two related questions—the first, whether a home rule study should be undertaken and secondly, the election of members to a study commission if the vote is favorable to such a study. To accomplish this two-fold objective at one and the same election, the Legislature directed that the instructions in question be given. It did so in recognition of human experience that absent such instructions, voters who disapproved the study itself and voted accordingly would reasonably conclude that they were either barred from or had no interest in the selection of members of the study commission. To afford the maximum assurance possible that the elected members of the commission represent the majority selection of all the voters, not just those who favored the study itself, the Legislature wisely directed that appropriate instructions be given to the voters at large to accomplish this purpose. Adequate instructions designed to afford reasonable notice to all voters, regardless of their view or vote on the study itself, that they are to vote upon the election of study commission members is mandatory. It is essential not only to the study itself, but also in its direct impact upon the ultimate recommendations that the study commission will make to the voters.

Referendum questions authorized to be presented to the electorate under a particular statute have been held to constitute a special election within the meaning of Section 637 of the Pennsylvania Election Code, 25 P.S. §2787, rendering the giving of proper notice thereof a fundamental preliminary requisite, without which

the election is invalid regardless of the publicity surrounding it. *Frederick H. Harper, Jr., Inc. Appeal,* 150 Pa. Superior Ct. 569, 29 A. 2d 236 (1942); *Kimmell's Appeal,* 52 Pa. D. & C. 279 (1945), *appeal dismissed,* 157 Pa. Superior Ct. 59, 41 A. 2d 436 (1945). These decisions were reached in the absence of any particular provision in the statute involved as to the manner or method by which the referendum question was to be presented to the voters. They are significant here in disclosing the importance that must be attached to informing the electors of special matters upon which they will be called to vote.

The issues of whether a court in an "election contest" proceeding or within its general equity jurisdiction has jurisdiction to entertain one or more of the common issues raised by voters in these two proceedings are difficult to resolve partly because of the various averments of the initial pleading in each case and partly because the decisional law on the subject is not entirely clear.

We agree with the lower court that "election contest" proceedings are wholly statutory and jurisdiction over the subject matter of an election contest petition must be found in the Pennsylvania Election Code or in some other statute incorporating the Pennsylvania Election Code by reference. *Greene Township Malt Beverage License Referendum Contest, supra.* It has also been declared that a court of equity has no inherent jurisdiction with respect to election contests as such but will "intervene to declare null and void a *referendum* election where some positive and material requirement of the law has been disregarded or ignored." *Gunnett v. Trout, supra* at 510, 112 A. 2d at 336 [emphasis added]. *Gunnett,* in our opinion, is ample authority to afford jurisdiction to the lower court in the equity action to entertain issues raised by plaintiff in that proceeding asserting the mandatory nature of the in-

structions required to be given to voters by Section 202 of the Act; the lower court recognized such jurisdiction but concluded that such provisions were directory, a conclusion with which we disagree. Similarly, other averments of plaintiff's complaint in equity asserting noncompliance by election officials with other provisions of the HRCL which require certain filings to be effected (Section 201(a)) and posting of certain notices (Section 242) are within the ambit of *Gunnett* and are proper subjects that a court of equity may entertain. *Also see Hellertown Borough Referendum Case*, 354 Pa. 255, 47 A. 2d 273 (1946); *McLaughlin v. Summit Hill Borough*, 224 Pa. 425, 73 A. 975 (1909).

Turning to the election contest proceeding, we first note that Article II of the HRCL, establishing the procedure for the adoption of a home rule charter (or optional plan of government), in its various sections repeatedly provides that except as otherwise specifically provided in the statute itself, the presentation of the public question, the election of study commission members, the conduct of the election itself and a canvass of the results are to be governed by the applicable provisions of the Pennsylvania Election Code. Section 241 sweepingly declares that "[a]ll elections provided for in this act shall be conducted by the election officials . . . in accordance with the Pennsylvania Election Code."

These provisions clearly demonstrate a legislative intent that all matters pertaining to an election which are the subject of an election contest under the Pennsylvania Election Code are likewise subject to an election contest under the HRCL. In the instant election contest proceedings the lower court concluded that none of the issues raised therein were matters subject to an election contest under the Pennsylvania Election Code. We disagree. To the extent that the petition alleges any fraud or other wrongdoing on the part of election offi-

cials or others in the casting, computation or return of the vote concerning the election of the members of the study commission, these are subjects which are peculiarly for an election contest (*Gunnett, supra,* 380 Pa. at 509, 510, 112 A. 2d at 336, 337), which the Legislature has declared to be an available procedure with respect to the election of study commission members. In reaching a contrary conclusion, the lower court reasoned that election contest proceedings under the Pennsylvania Election Code were restricted to the five classes of public officers designated in Section 1711 of the Pennsylvania Election Code, 25 P.S. §3291, and found study commission members not to be such public officers. We believe this to be a too narrow view of the repeatedly manifested intent of the Legislature that the provisions of the Pennsylvania Election Code are to be applicable to elections under the HRCL unless otherwise provided in the statute itself. We also note that Section 204 of the HRCL specifically provides that the "votes cast for members of the commission shall be counted, and the result thereof returned . . . and a canvass of such election had, as is provided by law in the case of election of members of municipal council or board." These officials are unquestionably public officers under Class V of Section 1711 of the Pennsylvania Election Code, 25 P.S. §3291, permitting election contests with respect to these elections. The voters should have an equivalent right to contest the election of members to a study commission and we believe the Legislature clearly has said so.

In summary, issues which may be raised in election contest proceedings under the Pennsylvania Election Code may be similarly raised with respect to all election matters provided for in the HRCL unless otherwise specifically provided; jurisdiction of a court of equity to entertain issues raised under the HRCL is of equal

scope and subject to the same limitations as relate to election matters generally.

In the event the evidence in the equity proceedings supports plaintiff's allegations that the election officials did not give reasonable instruction required by Section 202 of HRCL to be given to the voters incident to the special election in question, then the election on the referendum question itself as well as the election of members to the study commission must be declared null and void.

The orders of the lower court in each of the above appeals are reversed, and they are remanded for further proceedings consistent with this opinion.