## Earley v. Board of Elections of Crawford County

*Harry Faber White II*, for plaintiffs.
*Anthony J. Vardaro*, for defendants.

WALKER, *J.*, December 6, 1988 — At the election held November 8, 1988, a referendum question was on the ballot of voters in the City of Meadville, Crawford County, Pennsylvania, relating to the creation of a government commission to study the existing form of government in the city and consider optional forms of government. The Home Rule Charter and Optional Plans Law, 53 P.S. §1-101 provides for such

referendums. 53 P.S. §1-201 provides for three specific alternative questions and the proponents in this case used alternative number three.

53 P.S. §1-242 provides:

"At least 30 days notice of each election herein provided for shall be given by the clerk or secretary of the municipality. A copy of such notice shall be posted at each polling place of the municipality on the day of the election and shall be published in at least one newspaper of general circulation in the municipality once a week for three consecutive weeks during the period of 30 days prior to the election."

Although advised of this requirement by defendant in August, the City of Meadville through oversight or inadvertence did not publish the requisite legal notice. The parties agree that the failure to comply with the notice provision nullifies the election.

The parties have stipulated as to all of the relevant facts and have agreed with the legal principle up to the point of voiding the election, but they disagree as to what further action, if any, this court should take. It is plaintiffs' position that the court should order the referendum question back on the ballot for the next available election which would be the May 1989 primary, and also place the names of the individuals who have filed petitions for election to the study commission on the ballot. It is defendant's position that the court should declare the election void and do nothing further, leaving it to the proponents of the study commission to recirculate and refile petitions to have the question placed back on the ballot.

Before proceeding to the merits of the controversy, a procedural matter should be addressed. Pa.R.C.P. 1007 provides that a civil action may be commenced by the filing of a praecipe for a writ of summons, a complaint, or an agreement for an amicable action. The rule is made applicable to actions in equity by

Pa.R.C.P. 1501. Plaintiffs attempted to begin the instant case by a petition. Except where specifically authorized by statute, litigation cannot be commenced by a petition. Defendant has not raised the issue of the propriety of the pleading and has responded to the petition, and we believe that should be treated as a waiver of the defect. Errors in the method of commencing an action can be waived. Goodrich-Amram 2d §1007:10. We are required under rule 126 to construe the rules in such a manner as to give just, speedy and inexpensive justice and may disregard errors of procedure which do not affect the substantial rights of the parties. We believe it appropriate in this case, in accordance with rule 126, to treat the petition that has been filed as a complaint in equity, and the answer as an answer in equity, and proceed with a disposition on the merits as though this were an equity case.

Neither the research of counsel nor our own research reveals any authority among the decisions of our appellate courts to guide us and thus, we essentially sail forth on uncharted seas with only the compass of common sense. Both sides have cited *Reese v. County Board of Elections of Lancaster County,* 10 Pa. Commw. 448, 308 A.2d 154 (1973). The only real help to be found in that case is the holding that a court of equity has the right to assume jurisdiction in cases such as this. Defendant takes comfort in *Reese* by the fact that the court did not order the referendum question back on the ballot. This comfort is misplaced because in the procedural context of *Reese,* the challenge had been peremptorily dismissed by the lower court, and the Commonwealth Court simply remanded to the Lancaster County court for further proceedings. We are not privy to any knowledge as to what further proceedings resulted at the common pleas level.

The parties also cite *Sprague v. Casey,* 519 Pa. 315, 548 A.2d 249 (1988). This was the case in which the Supreme Court of Pennsylvania exercised original jurisdiction and cancelled the election for appellate court judges that was to have been held in November 1988. The decision was based on the constitutional provision that requires judges to be elected in municipal elections in odd-numbered years rather than general elections in even-numbered years. Defendant again points out that the Supreme Court did not order the individuals who had been nominated in the 1988 primary back on the 1989 ballot. Normally, the Supreme Court does not go beyond the needs of the particular dispute, and this is particularly true in cases involving the Constitution. The Supreme Court made no disposition one way or the other as to how the 1989 election is to be handled insofar as appellate court judges are concerned, but it did extend for one year the commissions of the appointed incumbents. The matter may still come before the court in the future since from new accounts we have gleaned the fact that Allen Ertel, the Democratic nominee for Justice of the Supreme Court, has suggested that he may be instituting litigation to have his name placed on the 1989 ballot without a further primary contest. Thus, we do not consider *Sprague* as necessarily authority for our present problem.

A third case is cited by defendant, *Chenet v. County Board of Elections of Westmoreland County,* 56 Westmoreland L.J. 195 (1974). *Chenet* held that the notice requirements were mandatory and not directory, but it acted prospectively in that it voided the ballot before the election had been held and again we do not know whether the Westmoreland

County Board of Elections then gave proper notice of the election and subsequently placed the question on the ballot or not.

Everyone agrees that the proponents of the referendum question circulated appropriate petitions, filed them timely and did everything required by law to obtain a valid decision by the electorate on the referendum question. The proponents did not get a valid electoral decision on the referendum question, and thus have not been given that which they were entitled to. Obviously placing the referendum question on the May 1989 primary ballot does change the game. It is a well-known fact that general elections in presidential years bring out many voters who do not otherwise bother to vote, and a municipal primary election does not create the same amount of interest and in all probability will not bring out as many voters as the November 1988 election did. That, however, is a fact of life tht cannot be avoided. We can see absolutely no prejudice to defendant in being required to place the referendum question on the May 1989 ballot, and it would avoid whatever onerous tasks may be involved in the circulating and filing of new petitions.

The election of commission members appears to us to stand on somewhat different footing. A referendum question is an inanimate object not subject to change with time. The commission members are human beings and thus not immutable. Ten individual citizens circulated and filed petitions as candidates for the study commission. Had the referendum received an affirmative vote, the top seven vote-getters would have constituted that commission. In the period of six months from November to May, we have no way of foretelling what may happen to any of those 10 individuals. They could move out of the city and thus become ineligible. They could become

disabled by accident or illness. They could simply lose interest in the issue. They will in short be subject to "the slings and arrows of outrageous fortune . . . the thousand natural shocks that flesh is heir to."

Plaintiffs argue that there are provisions in the Election Code for withdrawing nominating petitions prior to elections. This is, of course, true, but we would have no way of knowing whether a disinterested candidate would even bother to file the necessary withdrawal. We feel that the risks of arbitrarily including the 10 individuals who filed nominating petitions for the commission outweighs the burden that is placed upon them to recirculate nominating petitions. We will thus leave it to the candidates who wish to be candidates in May 1989 to circulate the requisite nominating petitions and file them.

## DECREE NISI

And now, December 9, 1988, a decree nisi is entered directing defendant to place a question on the ballot at the May 1989 primary election for voters in the City of Meadville, Crawford County, Pa., as follows:

"Shall a government study commission of seven members be elected to study the existing form of government of the City of Meadville; to consider the advisability of the adoption of an optional form of government or a home rule charter; and to recommend the adoption of an optional form of government; or to draft and recommend a home rule charter?" without any further action on the part of the proponents of the referendum question.

Defendant shall accept for filing petitions on behalf of any person desiring to be a study commission member in accordance with the provisions of the Home Rule Charter and Optional Plans Law, and shall place upon the ballot for the May 1989

primary, the names of any individuals who file proper and timely nominating petitions.

Any party may request post-decision relief in accordance with the Rules of Civil Procedure. If no such request for post-decision relief is filed within 10 days of notice of this decree nisi to the parties, this decree nisi shall become a final decree on praecipe of any party in interest.