**ALBERT GALLATIN AREA
SCHOOL DISTRICT**

v.

**PENN TRANSPORTATION SERVICES,
INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1997.

Decided Dec. 19, 1997.

Herbert Margolis, Uniontown, for appellant.

Alfred C. Maiello, Pittsburgh, for appellee.

Before KELLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Penn Transportation Services, Inc. (Penn Transportation) appeals an order of the Court of Common Pleas of Fayette County (trial court) which denied the post-trial relief motion of Penn Transportation.

The factual and procedural history is as follows. The Albert Gallatin Area School Board (Board) decided to undertake a series of renovations to the Albert Gallatin School District (School District) existing facilities and the possible construction of a new high school. In June of 1993, the Board hired an architectural firm to conduct a feasibility study with regard to two phases of a building project. Phase I involved renovations of three (3) existing elementary schools and Phase II involved construction of a new high school. The Board elected to proceed with both phases of the project and the architects established schedules for both projects. After approval of the Planning Construction Workbook (PLANCON G) [1] for Phase I, the Board held a special meeting on June 26, 1995. All members present voted to award the construction contracts. The Board pro-

---

1. PLANCON G is a document that is submitted to the Department of Education by the School District for the purpose of determining the level of reimbursement to the School District from the state and to determine the project's compliance with applicable laws and regulations.

ceeded with Phase I and that project is not herein at issue.

However, as to Phase II, a conflict existed as to location of the new high school.[2] In October of 1995, the Board was split with five (5) members in favor of the new school project and four (4) members against it. The Board held a hearing on October 3, 1995 and opened bids for the project. The bids were reviewed by the Board on October 5, 1995. At their next regularly scheduled meeting on October 18, 1995, the Board reviewed PLAN-CON G, passed a motion to approve it and submit it to the Department of Education. Written notice of approval of PLANCON G was received on October 31, 1995.[3]

On November 2, 1995, the Board President, Dr. Hearn, signed twelve (12) construction contracts, including one for Penn Transportation. The contracts were signed without approval or authorization of the Board and without the signature of the Board secretary. Penn Transportation received the contract and a notice to proceed on that same date. On November 3, 1995, Penn Transportation began site preparation for the new high school. On November 4, 1995, a special meeting of the Board was held and the Board passed a resolution to declare all building project contracts null and void as of that date. The project for building of the new high school was placed on hold until a regular meeting of the Board in December. Following the meeting, Penn Transportation was notified by the district solicitor to stop construction. On December 5, 1995, a newly elected Board voted to stop the high school project.

On February 2, 1996, Penn Transportation filed a demand for arbitration seeking to recover compensable damages for work executed in the new high school project. The School District filed a Petition to Stay Arbitration on April 17, 1996. Penn Transportation filed an answer on May 11, 1996. A three (3) day evidentiary hearing was held before the trial court September 30, 1996 through October 3, 1996. Thereafter, the trial court entered an opinion on December 30, 1996 granting the Petition to Stay of the School District. On January 9, 1997, Penn Transportation filed a Motion for Post–Trial Relief. The Motion was denied by the trial court on January 29, 1996.[4] This appeal followed.

As to Phase II, the high school construction project, the trial court found four (4) steps were relevant to disposition of the matter. The first step required the Board to hold a public meeting to review the construction project and establish the estimated cost. The second step required the School District to advertise for bids from construction companies. The third step required the Board to hold a meeting for approval of PLANCON G. The fourth step indicates that if the Department of Education approves PLANCON G, the Board is to hold a special meeting for the purpose of awarding contracts by majority vote, duly recorded, to successful bidders. This meeting can only be scheduled by the School District after written confirmation of the Department of Education's acceptance of PLANCON G is received.

It is the fourth step that is at issue herein. We are specifically asked to determine whether a valid, enforceable contract for construction services exists between Penn Transportation and the School District in the absence of a formal vote by a majority of the Board. Our standard of review of a trial court's denial of a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc. v. Department of Transportation*, 163 Pa. Cmwlth. 251, 641 A.2d 11 (1994).

Here, the trial court determined that the award of the contract by the Board president to Penn Transportation was not in compliance with Sections 427 and 508 of the Public School Code of 1949 (Code), Act of March 10,

---

2. A taxpayer's group of area residents was formed which opposed the project by distributing literature, filing lawsuits and running school board candidates who were opposed to the new high school in the November election.

3. Verbal notice of approval was received on October 27, 1995.

4. On the same date, January 29, 1996, the trial court also denied an oral motion by the School District to quash the Motion for Post–Trial Relief.

1949, P.L. 30, *as amended,* 24 P.S. § 4–427 and 24 P.S. § 5–508. Section 427 restricts the authority of the Board president and provides, in relevant part, as follows:

> The president shall be the executive officer of the board of school directors, and ... shall in no case, except where this section otherwise provides, sign any order for any sum unless the same has first been acted upon and approved by the board
>
> ....

Section 508[5] governs when formal school board contract approval is required and states, in pertinent part:

> The affirmative vote of a majority of all members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: -
>
> * * * *
>
> Entering into contracts of any kind, ... where the amount involved exceeds one hundred dollars ($100).

Here, the stipulated facts indicate that no Section 508 vote to award a contract to Penn Transportation occurred and that Dr. Hearn had no Board authorization to sign any contract or bind the School District under Section 427 of the Code. R.R. 33a, 81a. Rather, the evidence of record indicates to the contrary. The District Superintendent, Dr. Denise Martin, testified that no vote was ever taken by the Board to award the contract to Penn Transportation or any other construction contracts for the project, that Dr. Hearn did not have Board authority to execute the contracts, and that a majority of the Board attempted to stop him from executing the contracts. R.R. 40a. This testimony was corroborated by other School District witnesses.

From our review, the trial court properly found that the award of the contract to Penn Transportation by the Board president did not comport with the requirements of Sec-

tions 427 or 508 and thus, was not valid under the Code. Accordingly, we affirm the order of trial court.

### ORDER

AND NOW, this 19th day of December, 1997, the January 29, 1997 order of the Court of Common Pleas of Fayette County is affirmed.

---

5. In *Hazleton Area School District v. Krasnoff,* 672 A.2d 858 (Pa.Cmwlth.1996), *appeal denied,* 546 Pa. 670, 685 A.2d 548 (1996), we reaffirmed the standard that Section 508 requires an affirmative vote of a majority of the school board members for a contract to be binding on the school district and indicated that a contract cannot be proven absent "solid proof" of the majority's approval of any contract in excess of $100.00.