Vaughn KOTER, Ralph Vivian, Sally Ann McGuire, Emil Feist, Michele Kane, Christopher Evans, Sister Mary Eleanor Thornton, RSM, Ruth Whalen, Teresa Hustey, George Hammerbacher, Simon Daywood, Samir Maroun, John Thornton and Elwood Rosengrant

v.

Joseph COSGROVE, John Elias, and Constance Wynn, in their capacity as the Luzerne County Board of Elections and Kevin Jordan as Director of Voter Services for Luzerne County and the City of Wilke–Barre.

Appeal of W–B Taxpayers Association and The Green Party,

Vaughn Koter, Ralph Vivian, Sally Ann McGuire, Emil Feist, Michele Kane, Christopher Evans, Sister Mary Eleanor Thornton, RSM, Ruth Whalen, Teresa Hustey, George Hammerbacher, Simon Daywood, Samir Maroun, John Thornton and Elwood Rosengrant, Appellants,

v.

Joseph Cosgrove, John Elias, and Constance Wynn, in their capacity as the Luzerne County Board of Elections and Kevin Jordan as Director of Voter Services for Luzerne County and the City of Wilke–Barre, W–B Taxpayers Association and The Green Party.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2003.

Decided Jan. 14, 2004.

Reargument En Banc Denied March 16, 2004.

James A. Gibbons, Scranton, for appellants.

Harry W. Skene, Pittston, for appellees, Wilkes–Barre Taxpayer Assoc., et al.

William E. Vinsko, Jr., Wilkes–Barre, for appellee, Wilkes–Barre City.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

The primary question we are asked here to decide is whether taxpayers can challenge the result of a ballot referendum in equity, rather than under the auspices of Section 201.1 of the Pennsylvania Election Code (Election Code),[1] the latter of which contains specific time deadlines for such challenges. We must also consider whether a petition to intervene, for purposes of appeal, was properly granted by the trial court.

Plaintiffs, who are Appellants here at No. 486 C.D. 2003, are registered voters within the City of Wilkes–Barre, Luzerne County. Plaintiffs initiated an equity action with the Court of Common Pleas of Luzerne County, seeking to invalidate the results of a municipal election as to a

---

1. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2621.1, added by Section 1 of the Act of February 19, 1986, P.L. 29.

particular referendum question. The referendum question dealt with a proposed amendment to the Home Rule Charter of the City of Wilkes–Barre that sought to reduce the number of City Council members from seven to five and that also sought to have City Council members elected by district, rather than the at-large process then in effect.[2] The question was on the November 2001 ballot, and a majority of the voters in that election voted in favor of the referendum question.

Approximately thirteen months later, on December 11, 2002, Plaintiffs brought their challenge to the referendum election. In support of their position, Plaintiffs relied on Section 201.1 of the Election Code, arguing that the Luzerne County Board of Elections (Board) failed to abide by its provisions. Section 201.1 of the Election Code requires the Board to both prepare a plain English statement of the proposed referendum question, and to post three copies of the statement "in or about the voting room outside the enclosed space with the specimen ballots and other instructions and notices of penalties."

The Board and the rest of the Defendants acknowledged before the trial court that the Board failed to comply with this posting requirement, but argued that the challenge should be quashed for failing to conform to either of the two requirements of Section 1756 of the Election Code, 25 P.S. § 3456. Section 1756 requires challenges to be raised within twenty (20) days of the election and also requires twenty (20) registered voters to join in the challenge.[3] In response, Plaintiffs argued that, under *Gunnett v. Trout,* 380 Pa. 504, 112 A.2d 333 (1955), and *Reese v. County Board of Elections of Lancaster County,* 10 Pa.Cmwlth. 448, 308 A.2d 154 (1973), challenges to referendum notice requirements are appropriately raised in equity and, therefore, are not subject to the challenge time limits set forth in the Election Code.

The trial court accepted Plaintiffs' argument, concluding that the Election Code procedures were not applicable and that an equity jurisdiction proceeding was appropriate. Sitting in equity, the trial court then reviewed the merits of the case, finding that the "plain English" explanation of the referendum question at issue was not properly distributed to and posted in several polling places on Election Day 2001. Based upon this finding, the trial court issued a decree nisi on January 17, 2003 invalidating the results of the November 6, 2001 election as it concerned the referendum question.

■ The Board and the Director for Voter Services for Luzerne County filed post-trial motions challenging the decree nisi, particularly regarding whether Plaintiffs were required to exercise the post-election challenge remedy provided for in the Election Code. The Wilkes–Barre Taxpayers Association (Association) sought to intervene in the post-trial motions, and the common pleas court granted it intervener status. The Association did not file a brief in support of its arguments, instead choos-

---

2. The exact terms of the ballot question read:
Shall Home Rule Charter of City of Wilkes–Barre, Article III, be amended to read:
3:01: "There shall be a City Council of five (5) Members nominated and elected by qualified voters of the City, by district."
3:02: "Only qualified voters domiciled in their respective districts shall be eligible to hold office of Council Member."

3:03: "Five (5) Council Members shall be elected under this Charter as amended, for a term of four (4) years."
3:17: "A quorum of Council shall be three (3) members."

3. The parties acknowledge that the plain English statement had been published in a local newspaper prior to the election.

ing to join the arguments of the Board and the Director for Voter Services. Thereafter, the trial court denied the motions for post-trial relief.[4] Cross appeals ensued and were consolidated before this Court.

Three issues are raised for our disposition: First, Plaintiffs posit that the trial court abused its discretion in allowing the Association to intervene; second, the Association contends that the trial court erred in failing to dismiss the complaint for lack of subject matter jurisdiction; and third, the Association maintains that the trial court erred in failing to dismiss the complaint because Plaintiffs failed to exhaust statutory remedies under the Election Code.

■ Regarding the intervention[5] issue, Pa. R.C.P. No. 2327 allows for intervention where, *inter alia,* one could have joined as an original party. Here, the Association could certainly have joined in the original action and it clearly had a stake in protecting the reforms it had sought. Indeed, the Association's membership is made up of 350 taxpayers who had previously been proponents of having the referendum question placed on the ballot. In the instant case, the record shows that it sought to intervene following the issuance of the decree nisi out of concern that the trial court Defendants, who, up to that point, had been the only ones defending the case, would not file an appeal. Moreover, allowance of the Association's intervention petition did not impede the progress of the case in that the Association adopted the arguments and briefs of the

Defendants in their entirety. Under these circumstances, we find no manifest abuse by the trial court in allowing the intervention of the Association.

■ The second and third issues are interrelated and concern the fundamental inquiry of whether this case is governed by the time deadlines in the Election Code or the common law notions of equity. The Association argues that the Election Code controls, while the Plaintiffs argue that equity controls. The trial court agreed with the Plaintiffs, relying on *Gunnett* and *Reese* to conclude that the action was appropriately brought in equity and not under the Election Code.

In *Gunnett,* our Supreme Court was faced with a challenge to the vote tallies as to a referendum question that had been placed on the ballot. The Court concluded that statutory law afforded no relief for challenging a referendum, noting that:

> The election laws of Pennsylvania, to which a referendum under the Act of 1935 . . . is expressly made subject, provide for the contest of a nomination or an election of a candidate for public office under any one of five specified categories. . . . Notably, however, a contest of the certified result of a referendum is not to be found among any of those categories.

*Gunnett,* 380 Pa. at 508, 112 A.2d at 335 (citation omitted). The Court noted that "a court of law is without power under the election laws of the Commonwealth to en-

---

**4.** Our standard of review of a trial court's denial of a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Albert Gallatin Area School Dist. v. Penn Transportation Services, Inc.,* 704 A.2d 184, 185 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 721, 724 A.2d 936 (1998).

**5.** In reviewing a trial court's decision to allow intervention, we will affirm the trial court's decision unless it committed a manifest abuse in granting the intervention petition. *Chairge v. Exeter Borough Zoning Hearing Bd.,* 151 Pa.Cmwlth. 220, 616 A.2d 1057, 1059 (1992), *petition for allowance of appeal denied,* 536 Pa. 632, 637 A.2d 292 (1993).

tertain a contest of the result of a referendum." *Id.* at 509, 112 A.2d at 336. However, it distinguished post-election acts, such as the recounting of ballots, from the "positive and material" pre-election requirements, such as the provision of appropriate notice, concluding that the latter acts could be entertained in equity. It also noted that "Equity will, of course, intervene to declare null and void a referendum election where some positive and material requirement of the law has been disregarded or ignored." *Id.* at 510, 112 A.2d at 336.

We have applied this principle to conclude that the failure to provide statutorily mandated notices prior to an election supplies a basis for a trial court to exercise equity jurisdiction. Premised on *Gunnett,* we reasoned, in *Reese,* that averments that election officials had failed to abide by the notice provisions of the Home Rule Charter Law [6] "are within the ambit of *Gunnett* and are proper subjects that a court of equity may entertain." *Reese,* 308 A.2d at 158.

In the instant case, the common pleas court correctly noted that Plaintiffs' challenge to the referendum falls within its equity jurisdiction because, similar to *Reese,* the challenge involves the failure to provide a required notice. As such, we agree with the common pleas court that the specific statutorily prescribed time limitations set forth in Election Code challenges are inapplicable.

■ However, although the Election Code procedures and time limitations themselves are not applicable here, we cannot ignore the fundamental policy reasons behind having such limitations. The continuing and efficient operation of government is dependent upon the prompt resolution of election contests. Our system depends upon the timely certification of a winner. The operation of each of three branches of government would be threatened in the absence of clear time limitations for the challenging of an election. By placing a twenty-day limitation on challenges to elections, the Election Code affords the opportunity for challenges to be resolved prior to the time in which the winner would assume office, thereby ensuring continuity in the operation of government.[7]

These basic policies are also applicable to challenges made to referendums. The purposes underlying the referendum process would be eviscerated if a referendum's passage could be challenged at any time. Allowing untimely challenges could render every successful referendum suspect, leaving the public who adopted it, and the governing body that must implement it, continually unsure as to its status. Allowing challenges to a successful referendum to be brought at any time, thereby delaying its implementation, would frus-

---

6. Act of April 13, 1972, P.L. 184, 53 P.S. 1–101 through 1–1309, *repealed and recodified as* the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. 2901–2983.

7. Our courts have, on occasion, extended the time frame in which an Election Code challenge could be brought, allowing such a challenge *nunc pro tunc* when raised two months after the challenged election and when the opposing side had also filed its own challenge within the same time frame. *See In re Petition to Contest the General Election for District Justice in Judicial District 36–3–03 Nunc Pro Tunc,* 543 Pa. 216, 670 A.2d 629 (1996). Although addressing the statutory challenge procedure set forth in the Election Code, the Supreme Court also discussed the doctrine of laches, concluding it was not applicable because neither party was prejudiced by the two month delay in bringing the challenge. At the time of the challenge, the Election Board was still in the process of tabulating the results of the election.

trate the will of the electorate, who, having passed the referendum, expect its timely implementation. As discussed above, challenges to referendums do not fall within the Election Code provisions but, rather, in equity. In allowing such equitable challenges, our courts have embraced equitable doctrines as relates to the timeliness of challenges.

▮ Equity has established the doctrine of laches to preclude actions that are brought without due diligence and which result in prejudice to the non-moving party. *Brodt v. Brown*, 404 Pa. 391, 172 A.2d 152 (1961). Laches is appropriately applied in cases involving procedural challenges to statutory changes. *Stilp v. Hafer*, 553 Pa. 128, 718 A.2d 290 (1998). In *Stilp*, a number of citizens brought suit challenging the validity of a statutory enactment made eight years earlier, arguing that the procedures employed did not comply with constitutional requirements. The Pennsylvania Supreme Court disagreed, applying laches to preclude a constitutional challenge based upon purported procedural deficiencies arising in enactment of a statute.

In the instant case, Plaintiffs challenge the validity of a referendum, arguing that the procedures employed did not comply with statutory requirements. We find that challenges based on the failure to follow statutorily prescribed procedural requirements are sufficiently analogous to challenges based on the failure to follow the constitutionally prescribed procedural requirements discussed in *Stilp*, such that our application of the doctrine of laches to the facts and circumstances of this case is appropriate.

▮ As noted above, application of laches requires the party asserting it to establish two elements: (1) a delay arising from the complaining party's failure to exercise due diligence and (2) prejudice to the asserting party resulting from the delay. *Stilp*, 553 Pa. at 132, 718 A.2d at 292. Its application is dependent upon the specific facts and circumstances of each case. *Id.* A determination as to whether the complaining party acted with due diligence will depend on what that party might have known based on the information within its reach. Prejudice can be found where a change in the condition or relation of the parties occurs during the time the complaining party failed to act.

In the instant case, we hold that these two requirements are met. The record indicates that in the thirteen months following the election, the Board has taken steps to implement provisions of the referendum. A challenge at this late date prejudices that Board since it has already begun to act upon the referendum's terms, and prejudices the electorate that has enacted the provision and awaits its implementation.

Plaintiffs offer no meaningful reason why they did not raise the challenge until nearly thirteen months following the election. They premise their delay in challenging the results on the local government's particular inactions in implementing the results, saying that no concrete implementation steps were made until nearly twelve months after the election.[8] However, the triggering event for the challenge was not the government's implementation of the referendum, but was, instead, the point when the results of the election became clear. The results of the election were clear immediately

---

8. The particular steps referenced were that a local commission established to create the districts set forth in the referendum question had to prepare a plan defining each of the districts from which the officials would be elected.

following the counting of the ballots, and there is no allegation that the Plaintiffs were unaware of the result. Under these circumstances, where over a year has passed since the election occurred and where steps have begun to implement the successful referendum question, we find the application of laches appropriate in precluding the instant challenge.

For these reasons, we hold that the trial court correctly concluded that the case could be brought in equity, but find that it erred in failing to apply the equitable doctrine of laches to preclude this suit. Accordingly, the order of the common pleas court is reversed.

### *O R D E R*

**NOW,** January 14, 2004, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby reversed.