475 A.2d 1325

In re RECANVASSING OF CERTAIN VOTING MACHINES FOR the ELECTION OF REPUBLICAN CANDIDATE FOR COUNTY COMMISSIONER IN the NOVEMBER, 1983 GENERAL ELECTION.

Appeal of Lowman S. HENRY.

Supreme Court of Pennsylvania.

Argued March 5, 1984.

Decided June 5, 1984.

594

Gary F. Selway, Greensburg, for appellant.

Edgar T. Hammer, Jr., Greensburg, for Commissioner Robert H. Miller.

Irving L. Bloom, County Sol., Greensburg, for Westmoreland County Bd. of Elections.

## OPINION

PAPADAKOS, Justice.

This is an appeal of a Westmoreland County Common Pleas Court Order dismissing in part a petition to recanvass the votes in seventeen election districts. The Court permitted recanvassing in three of the districts but denied the petition with respect to the remaining fourteen districts. By order dated March 7, 1984, we directed that a recanvass be made in ten of the remaining fourteen districts.[1] This opinion is in support of that order.

██ In the General Election of November 8, 1983, Robert H. Miller and Lowman S. Henry were the Republican candidates for County Commissioner of Westmoreland County. On November 28, 1983, the Westmoreland County Board of Elections certified that Miller had defeated Henry by three (3) votes. On December 2, 1983, Henry and sixty-four other

1. It has been pointed out to us by Petition for Clarification of Per Curiam Order dated March 7, 1984 that said Order of March 7, 1984 incorrectly identified the ten voting districts directed to be recanvassed. Said Order improperly included the Hixson voting district to be recanvassed instead of Greensburg, 1st Ward, 2nd Precinct voting district. A correcting Order has since been entered.

registered electors filed a petition [2] to recanvass the voting machines in seventeen (17) districts. Miller filed a petition to dismiss the recanvassing petitions, alleging that they had not been timely filed, and that they did not comply with the provisions of Section 1702 of the Election Code [3] requiring that such petitions be verified by three qualified electors of each district.[4]

■ A hearing was held before the Honorable Richard E. McCormick on December 8, 1983. No challenging testimony was offered with regard to the petitions for three of the districts and a recanvass was ordered in those three districts. With respect to the fourteen remaining districts, testimony revealed that in four districts the affidavits verifying the petition had not been signed in the presence of a

2. There was one petition listing the names of three electors of each of the seventeen districts in which recanvass was sought. This petition was then verified by affidavits signed by the electors of their respective districts.

3. Act of June 3, 1937, P.L. 1333, 25 P.S. Section 3262.

4. Miller also filed a Motion to Quash Henry's appeal to this court alleging that we do not have jurisdiction to review the appeal, and cites Section 1407 of the Election Code, Act of June 3, 1937, P.L. 1333, 25 P.S. Section 3157(b) which provides: "No appeal shall be allowed or granted from any order or decree of the Court of Common Pleas made in pursuance of this section." This argument is without merit. This issue was addressed by this court in the case of *In re: Democratic Primary Election of Somerset Twp., Washington County,* 405 Pa. 169, 173, 174 A.2d 23 (1961) where we held that an appeal emanating from a recount proceeding under Section 1701, 25 P.S. Section 3261, is distinct from an appeal from a decision of a county board under Section 1407, 25 P.S. Section 3157. "An appeal from an order of the Court of Common Pleas in a recount proceeding is before us in the broadest sense allowed on certiorari. (Citations omitted). Where the statute is silent on the question of appeal, a review by certiorari may be had in 'the broadest sense' and the court may consider the record, including the testimony, to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made. Section 1701 of the Election Code and co-related sections contain no prohibition of appeal from a Common Pleas order in a relevant connection." 405 Pa. at 173, 175 A.2d at 25. Section 1702, 25 P.S. Section 3262 is co-related to Section 1701 and therefore subject to the same scope of review on certiorari. Motion to Quash was therefore denied.

notary public. The Court properly dismissed the petition as to those four districts.

In the ten remaining districts, the affidavits verifying the recanvass petition were signed in the presence of a notary public, who, through oversight, neglected to administer the oath to the affiants. When, during the hearing, these errors became apparent, counsel for Henry and the other petitioners moved to amend the defective verifications. The hearing court held that the failure of the notary to administer the oath to the affiants invalidated the affidavits and, therefore, dismissed the petition as to those ten districts.

 Miller's first contention is that the petition to recanvass was not timely filed. We find this claim to be without merit. Section 1702 of the Election Code provides:

"c) Voting machines may be recanvassed under the provisions of this section at any time within twenty days after the date of the primary or election at which they were used."

Additionally, Section 1703(a)(1) [5] states:

(a)(1) Any petition to open a ballot box or to recanvass the votes on a voting machine pursuant to sections 1701 and 1702 shall be filed no later than five (5) days after the completion of the computational canvassing of all returns of the county by the county board. If any error or fraud is found the court shall grant the interested parties an additional five (5) days to file petitions requesting additional ballot boxes to be opened or voting machines to be recanvassed ..."

Miller argues that these two sections, read together, give a candidate five days after the date of computation in which to file a petition to recanvass, but in no event, longer than twenty days after the date of the election. Under this reasoning, if computation were completed in six days, for instance, the recanvass petition would have to be filed within five days thereafter, thereby rendering the twenty

5. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. Section 3263(a)(1), added by Section 5 of the Act of May 5, 1982, P.L. 374.

day provision completely superfluous. We do not agree with this interpretation. It is clear that the legislature intended, under Section 1702, to give a prospective petitioner twenty days after the date of the election or primary within which to file a petition to recanvass voting machines; but if the computational canvassing took longer than twenty days, for example, under Section 1703 the candidate would have five days after computation in which to file. This is the only interpretation that preserves both sections of the Act. When construing a statute, it is the function of the court to give effect to all its provisions [6].

Our interpretation is supported by the recently added amendment to Section 1703(a)(1) which permits the court to grant an additional five days to file petitions requesting more voting machines to be recanvassed, if fraud or error is found in the first machines recanvassed. We find further support for this interpretation in the language of Section 1230 of the same Act.[7] This Section deals with the removal and storage of voting machines and states: "The voting machines shall remain locked against voting for the period of twenty days next following each primary and election, and as much longer as may be necessary or advisable because of any existing or threatened contest over the result of the primary or election."

■ In sum, we hold that a candidate has twenty days after the date of a primary or election, or five days after the computation is completed, whichever period is longer, within which to file a petition to recanvass. Here, the Election was held on November 8, 1983. The County Election board certified the vote on November 28, 1983. Henry's recanvass petition was filed on December 2, 1983. Therefore, Henry's petition to recanvass, having been filed within five days after certification of the results of the election, was timely.

6. Statutory Construction Act of 1972, 1 Pa.C.S. Section 1921.

7. Act of June 3, 1937, P.L. 1333, 25 P.S. Section 3070.

Miller's second contention is that the recanvassing petition did not meet with the requirements of Section 1702 of the Election Code requiring that the petitions be verified by three qualified electors of each voting district. Section 1702 of the Election Code provides:

"The Court of Common Pleas ... of the county in which any election district is located shall make visible the registering counters of the voting machine or machines used in such election district at any primary or election, and without unlocking the machine against voting, shall recanvass the vote cast therein, if three qualified electors of the election district shall file a petition, *duly verified by them,* alleging that, ... they believe that fraud or error ... was committed in the canvassing of the votes cast ... " (Emphasis added).

We held in *Rome Township Referendum Recount Case,* 397 Pa. 331, 332, 155 A.2d 361, 362 (1959), that the Election Code is a highly remedial statute which should be liberally construed in order to secure a proper computation of the votes cast in an election. *Hazelton City Mayoralty Election,* 301 Pa. 14, 151 A. 586 (1930).

In the instant case, it is undisputed that the petition to recanvass was presented by three qualified electors of each of the respective election districts. Each of the affiants testified under oath in the proceeding considering the Petition that he or she read the document and knew that it was a petition asking for a recanvass based upon the affiant's belief that there was fraud or error in the computation of the votes. Further, it is conceded that the notary failed to administer the oath to the Affiants. The omission or neglect in not administering the oath was that of the notary public, not that of the petitioners. We see no good reason why they should suffer as a result.

An easily correctable mistake that causes no prejudice to anyone should not thwart a fundamental process of democracy.

In the final analysis, if we were to adopt Miller's view, the real losers would be the people of Westmoreland Coun-

ty, who have a fundamental interest in making certain that the election was fair and the votes correctly counted. We therefore hold that the trial court should have accepted the affiants' sworn testimony as curing the defective verification in the petitions to recanvass.

NIX, C.J., and ZAPPALA, J., concur in the result.