849 A.2d 230

**In re Contest of 2003 GENERAL ELECTION FOR THE OFFICE OF PROTHONOTARY of Washington County, Pennsylvania**

**Appeal of Phyllis Ranko Matheny.**

Supreme Court of Pennsylvania.

Submitted March 29, 2004.

Decided May 14, 2004.

4

Peter M. Suwak, Esq., for Phyllis Ranko Matheny.

Daniel Lucian Chunko, Esq., for Judith Fisher.

CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, and BAER, JJ.

## OPINION OF THE COURT

Justice NIGRO.

Appellant Phyllis Ranko Matheny appeals from the order of the Commonwealth Court which reversed the December 22, 2003 order of the Court of Common Pleas of Washington County dismissing Appellee Judith Fisher's petitions to open the ballot boxes in nine election districts in Washington County. For the reasons that follow, we reverse the Commonwealth Court's order.

Matheny and Fisher were candidates in the November 4, 2003 election for the Office of Prothonotary of Washington County.[1] An unofficial calculation of the election returns conducted on election night indicated that Matheny won the

---

1. Matheny was the incumbent Prothonotary and initially ran against Fisher in the primary election for the Democratic Party nomination for the Office of Prothonotary. Although Fisher won the primary election and Democratic Party nomination, Matheny obtained sufficient votes to win the Republican Party nomination and therefore the two faced each other again in the November election.

election by a margin of four votes. As required by the Election Code,[2] a few days after the election, the Washington County Board of Elections (the "Board") began an official computation and canvass of the election returns.[3] At the conclusion of the canvass, the Board determined that Matheny was the victor by a margin of seven votes.

On November 24, 2003, Fisher filed a petition contesting the election, arguing that certain absentee ballots had not been properly delivered to the Washington County Voter's Registration Office. In response, Matheny filed preliminary objections, asserting, among other things, that Fisher's petition must be dismissed because it was not signed by twenty registered electors as required by section 1751 of the Election Code.[4] On November 26, 2003, the trial court entered an order dismissing Fisher's petition because, as Matheny alleged, it was not signed by twenty registered electors. Fisher did not appeal from the trial court's order.

On December 1, 2003, the Board officially certified Matheny as the winner of the election for the Office of Prothonotary. That same day, Fisher filed nine petitions pursuant to section 1701 of the Election Code,[5] each of which requested that the

2. Act of June 3, 1937, P.L. 1333 (as amended 25 P.S. §§ 2600–3591).

3. Section 1404 of the Election Code provides as follows:

The county board shall, at nine o'clock A.M. on the third day following the primary or election, at its office or at some other convenient public place at the county seat, of which due notice shall have been given as provided by section 1403, publicly commence the computation and canvassing of the returns, and continue the same from day to day until completed, in the manner hereinafter provided. For this purpose any county board may organize itself into sections, each of which may simultaneously proceed with the computation and canvassing of the returns from various districts of the county in the manner provided by this section. Upon the completion of such computation and canvassing, the board shall tabulate the figures for the entire county and sign, announce and attest the same, as required by this section.

25 P.S. § 3154(a).

4. Section 1751 of the Election Code provides that fifth class election contests "shall be tried and determined upon petition of twenty registered electors." 25 P.S. § 3431; see also id. § 3291 (designating election for office of prothonotary as fifth class election).

5. Section 1701 of the Election Code provides:

trial court open the ballot box in a different election district so that the election returns in that district could be recounted.[6] Matheny subsequently filed preliminary objections, asserting that the petitions should be dismissed because the three electors who verified each petition did not do so before a notary public. On December 3, 2003, the trial court entered an order dismissing Fisher's petitions, although not for the reason advanced by Matheny in her preliminary objections. In its opinion filed with its order, the trial court explained that Matheny's preliminary objections were overruled because, contrary to Matheny's assertions, the electors' verifications did not need to be made before a notary public. Relying on the definition of "verify" in the Judicial Code, the trial court

> The court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall open the ballot box of such election district used at any general, municipal, special or primary election held therein, and cause the entire vote thereof to be correctly counted by persons designated by such court or judge, if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them, alleging that upon information which they consider reliable they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast for all offices or for any particular office or offices in such election district, or in the marking of the ballots, or otherwise in connection with such ballots. It shall not be necessary for the petitioners to specify in their petition the particular act of fraud or error which they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition.
>
> 25 P.S. § 3261(a).

**6.** On December 1, 2003, Matheny also filed three petitions requesting the trial court to open the ballot boxes in three different election districts. Three days later, however, Matheny filed a motion to stay her petition, stating as follows:

> In view of the fact that Matheny is presently ahead in the election count and the recount was necessary only if Fisher's petitions were granted, it is requested that the court stay any action on the instant petitions until any appeal or reconsideration is decided. In the event that no appeal is taken or such appeal results in an affirmance of Judge Emory's decision, the instant petition will be withdrawn. In the event that any appeal or reconsideration results in the nine petitions being granted, the instant petitions should be considered.

R.R. 136a. On December 30, 2004, the trial court granted Matheny's motion to stay her petitions "until any appeals or reconsiderations are completed concerning the nine petitions filed on behalf of Candidate Fisher." R.R. 275a.

determined that the verifications could be unsworn so long as they were made subject to the penalties of 18 Pa.C.S. § 4904 (providing penalties where person makes a false statement to authorities). *See* 42 Pa.C.S. § 102 ("verified" includes "an unsworn document containing a statement by the signatory that is made subject to the penalties of 18 Pa.C.S. § 4904"). As the electors' verifications were made subject to such penalties, the trial court concluded that they were properly made. However, the trial court then found *sua sponte* that all nine petitions were deficient because they did not state that the electors who had verified each petition were actually qualified electors in the election district at issue. Moreover, the court determined that the petitions were also defective because they did not contain averments that the electors who had verified the petitions were in fact petitioning the court or had joined Fisher in petitioning the court. Thus, given these latter findings, the trial court dismissed Fisher's petitions.

On December 4, 2003, Fisher filed a motion with the trial court requesting that the court: (1) reconsider its December 3, 2003 order; (2) grant her allowance to amend her nine petitions; and (3) stay its December 3rd order. On December 10, 2003, the trial court entered an order denying Fisher's request that it reconsider its December 3rd order, but granting Fisher three days to cure the errors in her nine petitions by filing nine amended petitions. Accordingly, on December 12, 2003, Fisher filed nine amended petitions that contained averments by the electors who verified each petition that they were qualified electors in the election district at issue and that they were joining Fisher in filing the petition they had signed.

As she had with respect to Fisher's original petitions, Matheny filed preliminary objections to Fisher's amended petitions. Matheny argued that Fisher's amended petitions were defective because the three electors who signed the verifications attached to the petitions had failed to sign the petitions themselves. Matheny also contended, as she had before, that the petitions were defective because the electors had not signed their verifications before a notary. On December 22, 2003, the trial court entered an order granting Mathe-

ny's preliminary objections and thereby dismissing Fisher's petitions.[7]

Fisher appealed from the trial court's order to the Commonwealth Court.[8] Fisher then filed a motion with the trial court requesting that it stay the certification of the results from the prothonotary election during the pendency of her appeals. Fisher also requested that the court impound the election returns in those nine election districts that had been the subject of her nine petitions. On December 30, 2003, the trial court entered an order denying Fisher's request to stay the certification of the election results, but granting Fisher's request to impound the voting returns in the nine election districts at issue in her petitions while her appeals were pending.[9]

On December 31, 2003, the Commonwealth Court entered an order scheduling argument in the matter for January 8, 2004.[10] Following argument, the Commonwealth Court entered an order on January 13, 2004, reversing the trial court's December 22nd order and remanding the case for the trial court to grant Fisher's petitions and order a recount in the nine election districts at issue in Fisher's petitions.[11] *See In*

7. In its order, the court merely stated that Matheny's preliminary objections were granted as "the Amended Petitions fail to adhere to the format and requirements of the Election Code." R.R. 251a.

8. Fisher also appealed to this Court requesting that we exercise extraordinary jurisdiction over the matter pursuant to 42 Pa.C.S. § 726. This Court, however, subsequently entered an order transferring the matter to the Commonwealth Court, stating that extraordinary jurisdiction was improper and the Commonwealth Court appeared to have jurisdiction over the case pursuant to 42 Pa.C.S. § 762(a)(4)(i)(C).

9. The trial court also agreed to impound the election returns in the three election districts that were the subject of Matheny's recount petitions. *See supra* n. 6; R.R. 271a.

10. Notably, on January 5, 2004, Matheny was sworn in as the Prothonotary of Washington County based on the Board's act of certifying her as the winner of the election.

11. Pursuant to Rule 3102(c)(2) of the Rules of Appellate Procedure, this case was heard and decided by Senior Judge Flaherty of the Commonwealth Court. *See* Pa. R.A.P. 3102(c)(2) ("A single judge of the Commonwealth Court shall be a quorum of the Court for the purposes of hearing and determining . . . [a]ny election matter.").

*re Contest of 2003 General Election for Office of Prothonotary of Washington County,* 841 A.2d 606, 614 (Pa.Commw.2004). In the opinion filed with its order, the Commonwealth Court explained that because the trial court had not specified exactly why the amended petitions did not comply with the Election Code, *see supra* n. 7 and accompanying text, it would consider both of the reasons raised by Matheny in her preliminary objections to the amended petitions, *i.e.,* that the petitions were defective because: (1) they were not properly verified by the electors; and (2) the electors had not signed the actual petitions.[12] With regard to the former claim, the Commonwealth Court noted that although the Election Code does not specify what constitutes a proper verification for purposes of petitions filed pursuant to its provisions, the Judicial Code and the Rules of Civil Procedure "accept as verification a statement that is made subject to the penalties of 18 Pa.C.S. § 4904." *In re Contest of 2003 General Election for Office of Prothonotary of Washington County,* 841 A.2d at 613. The court then determined that while verification of a recount petition may be made before a notary public, verification "may also be made by the method defined in the Judicial Code and the Rules of Civil Procedure which we rely on for guidance when a term like verification is not defined in the statute." *Id.* Accordingly, the court found that Fisher's petitions were properly verified because the electors who verified them did so subject to the penalties of 18 Pa.C.S. § 4904. *Id.* With regard to Matheny's latter claim, the Commonwealth Court concluded that the electors who verified Fisher's petitions did not need to also sign the actual petitions because "[t]he Election Code only provides that the electors must *verify* the petition, not sign it."[13] *Id.* (emphasis in original).

**12.** Following the Commonwealth Court's decision, the trial court issued a 1925(a) opinion explaining the reasoning for its December 22nd order. In the opinion, the trial court states that it dismissed Fisher's amended petitions because the three electors who verified the petitions did not also sign the actual petitions. *See* R.R. 315a–16a.

**13.** In its opinion, the Commonwealth Court also addressed a motion to quash that had been filed by Matheny before the case was argued. In that motion, Matheny argued that the trial court lacked jurisdiction to permit Fisher to amend her nine petitions because it had already

Matheny subsequently filed a petition for allowance of appeal with this Court, and we granted allocatur to consider the following issues:

Whether proceedings should be allowed to continue on the petitions to open the ballot boxes and recount votes, where the election results have already been certified, the declared winner has been sworn in, and there is no underlying election contest? [14]

Whether the Commonwealth Court erred when it concluded that the amended petitions were properly verified without notarization as required by the Election Code because they were verified by the statement referring to unsworn falsification to authorities?

See In re Contest of 2003 General Election for Office of Prothonotary of Washington County, 845 A.2d 757, 2004 WL 298702 (Pa. February 17, 2004).[15]

entered an order dismissing them and because the defects in the original petitions were not amendable. Matheny further asserted that Fisher did not have standing to bring the appeal from the trial court's decision solely in her name. According to Matheny, only the electors who had verified Fisher's petitions could appeal from the trial court's decision, and because those electors had not joined Fisher in filing the appeal to the Commonwealth Court, Matheny argued that Fisher's appeal must be quashed. In considering this motion, the Commonwealth Court first found that the trial court had jurisdiction to permit Fisher to amend her petitions after it had initially dismissed them because section 5505 of the Judicial Code allows a court to "modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505. Next, the Commonwealth Court determined that the trial court properly decided that the defects present in Fisher's initial petitions were amendable. Lastly, with respect to Matheny's standing argument, the Commonwealth Court concluded that Fisher had standing to appeal from the trial court's order because she was an aggrieved party to the trial court's order dismissing the nine amended petitions that had been filed, in part, in her name.

14. While Matheny did not raise this issue before the lower courts, it is not waivable as it implicates whether this Court has jurisdiction to even consider Fisher's nine petitions to open the ballot boxes. See In re Adoption of N.M.B., 564 Pa. 117, 764 A.2d 1042, 1045 (2000).

15. Based on the Commonwealth Court's December 31st order, the case was remanded to the trial court, which entered an order appointing a board to recount the votes in the nine election districts at issue in

In the first of her two claims, Matheny argues that we should not consider Fisher's nine petitions to open the ballot boxes because the results of an election cannot be changed after they have been certified except by means of an election contest petition.[16] While we agree with Matheny that once the results of an election have been certified they may only be changed on the basis of a timely filed election contest petition, *see* 25 P.S. § 3263 (an order regarding a petition to open shall not affect the official returns of any election contest unless the petition "shall have been presented before the certification of the ballot boxes ... or unless a contest shall have been instituted in the manner provided by this article"); *Appeal of Komoroski*, 399 Pa. 77, 159 A.2d 905, 906 (1960); *Gunnett v. Trout*, 380 Pa. 504, 112 A.2d 333, 335 (1955), we nevertheless find that because the Board improperly certified the election results in the instant case, as discussed below, we may consider Fisher's nine petitions to open the ballot boxes.

Section 1701 of the Election Code grants electors the right to file petitions to open the ballot boxes ("Petitions to Open") so long as they are filed "no later than five (5) days after the completion of the computational canvassing of all returns of the county by the county board." 25 P.S. § 3263. Moreover, to complement this right, section 1404 of the Election Code states that the county board may only certify the results of an election "[a]t the *expiration* of five days after the completion of the computation of votes" and even then, only if no Petition to Open has been filed. *Id.* § 3154(f) (emphasis added); *see also Appeal of Chase*, 389 Pa. 538, 133 A.2d 824, 827 (1957) (noting that "*certification cannot be made until five days after the computation is completed*") (italics in original) (underscore added); *Appeal of Cole*, 152 Pa.Cmwlth. 590, 620 A.2d

Fisher's petitions and directing the board to start recounting the votes as soon as possible. On January 23, 2004, however, the Commonwealth Court stayed the trial court's order pending this Court's disposition of Matheny's petition for allowance of appeal.

**16.** While Fisher filed an election contest petition with the trial court, the trial court denied that petition and Fisher did not appeal from the trial court's order. *See supra* 232.

565, 568–69 (1993) ("Board may not make the final certification until after the court has ruled on the petition.").

Unfortunately, the record in the instant case does not indicate when the Board concluded its official count. Fisher alleges that the Board concluded its count on November 26, 2003, exactly five days before she filed her nine Petitions to Open on December 1, 2003. Notably, Matheny neither disputes the November 26th date, nor contends that Fisher's Petitions to Open were untimely.[17] In fact, because Matheny herself filed three Petitions to Open on December 1, 2003, *see supra* n. 6, it would seem that she would agree with Fisher that the Board concluded its count no earlier than November 26th, and that the December 1st Petitions were therefore timely. In any event, as Matheny has the burden of showing that Fisher's Petitions to Open were untimely, *cf., Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668, 672 (1968), and she has not even attempted to meet that burden here, we will presume that the Board officially concluded its count no earlier than November 26, 2003, and that Fisher's Petitions were therefore timely. Accordingly, we conclude that the Board improperly certified the election results on December 1, 2003, before the expiration of the fifth day after it concluded its official count, *see* 25 P.S. § 3154(f), and thus, contrary to Matheny's contentions, this Court may consider Fisher's time-

17. While Matheny does not argue that Fisher's Petitions to Open were untimely, she nevertheless asserts that the Petitions may not be considered because they were *presented* to the trial court on December 2, 2003, after the election results were certified. According to Matheny, section 1703(b) of the Election Code requires that Petitions to Open be *presented* to the trial court before the election results have been certified. *See* 25 P.S. § 3263(b). However, although section 1703(b) states that a trial court's order concerning a Petition to Open shall not have any effect unless the Petition to Open was presented before the election results were certified, we interpret "presented" here to mean that the Petition must have been filed with the Prothonotary. Such a reading is consistent with section 1703(a), which states that an elector must *"file"* a Petition to Open no later than five days after the completion of the computation of the votes, and section 1404(f), which states that the Board may certify the votes on the expiration of the fifth day following the computation unless a Petition to Open has been *"filed."* *Id.* §§ 3263(b) (emphasis added), 3154 (emphasis added).

ly Petitions to Open as well as the second issue before us, *i.e.*, whether those Petitions to Open were properly verified.

Our goal in interpreting statutes is to ascertain and give effect to the General Assembly's intent. *See* 1 Pa.C.S. § 1921; *LTV Steel Co., Inc. v. Workers' Compensation Appeal Bd. (Mozena)*, 562 Pa. 205, 754 A.2d 666, 674 (2000). "When the words of a statute are clear and free from all ambiguity," we may discern that intent based on the plain meaning of the words without looking any further. 1 Pa. C.S. § 1921. However, "[w]hen the words of a statute are not explicit," we must attempt to ascertain the General Assembly's intent through a number of other factors, such as: the circumstances under which the statute was enacted; the goal to be attained by the statute; any former statute on the same subject; other statutes on similar subjects; the consequences of certain interpretations; the statute's legislative history; and legislative and administrative interpretations of the statute. *Id.*

Moreover, in considering statutory provisions of the Election Code, we must remember "the longstanding and overriding policy in our Commonwealth to protect the elective franchise." *In re Nomination Petition of Driscoll*, 847 A.2d 44, 49, 2004 WL 729192, *3 (Pa. April 6, 2004). To promote this policy, this Court has consistently held that the provisions of the Election Code must "be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice." *Id. see also In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327, 331 (2001); *Weiskerger Appeal*, 447 Pa. 418, 290 A.2d 108, 109 (1972). At the same time, however, we have said that "the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process." *Petition of Cianfrani*, 467 Pa. 491, 359 A.2d 383, 384 (1976).

As already made clear, this case concerns section 1701 of the Election Code, which grants electors the right to petition the trial court to order that the ballot boxes be opened following an election. According to section 1701, the trial court

must open the ballot box in an election district and direct that the ballots in that box be counted where three qualified electors from the district file "a petition *duly verified* by them," alleging that they have reasonable information to believe that fraud or error occurred in the computation of the votes. 25 P.S. § 3261(a) (emphasis added). Significantly, however, as both the trial court and Commonwealth Court pointed out below, the Election Code does not define the term "verified."

In determining the meaning of the term "verified" for purposes of section 1701, the lower courts looked solely to the definitions for "verified" provided in the Judicial Code and the Rules of Civil Procedure. However, the Judicial Code and the Rules of Civil Procedure are only meant to apply to those statutory provisions or rules promulgated, respectively, as part of the Judicial Code or Rules of Civil Procedure. *See* 42 Pa.C.S. § 102 ("the following words and phrases *when used in this title* shall have . . . the meanings given to them in this section") (emphasis added); Pa. R.C.P. 76 ("[t]he following words and phrases *when used in any rule promulgated by the Supreme Court* . . . shall have the following meanings"). In contrast, the Statutory Construction Act is meant to apply to "*any* statute finally enacted on or after September 1, 1937," such as the Election Code, unless the context of the statutory provisions at issue "clearly indicates otherwise." [18] 1 Pa.C.S. § 1991 (emphasis added). Therefore, unlike the lower courts, we find that we need to look to the Statutory Construction Act to determine the meaning of the term "verified."

According to the Statutory Construction Act, the term "verified," when used with respect to writings, means that the writing is "supported by oath or affirmation." [19] 1 Pa.C.S.

---

**18.** While the Election Code was initially enacted in June 1937, it has since been amended and thus, the definitions section of the Statutory Construction Act applies to it.

**19.** Notably, the Statutory Construction Act does not also provide that the term "verified" may include an unsworn document made subject to the penalties of 18 Pa.C.S. § 4904. In 1976, when the General Assembly adopted the Judicial Code, it introduced the concept that a verified document and an affidavit could include an unsworn document subject

§ 1991. Although the Statutory Construction Act does not further define the terms "oath" or "affirmation," the plain meaning of these terms, when used with respect to writings, is that the signer of the writing has either sworn or pledged to the truth of the statements in the writing before an official authorized to administer oaths or hear affirmations. An oath is typically defined as "[a] solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound by a promise." *See* Black's Law Dictionary 1099 (7th ed.1999); *see also* Merriam–Webster's Collegiate Dictionary 799 (10th ed.2001). Similarly, an affirmation is defined as "a pledge equivalent to an oath but without reference to a supreme being or to 'swearing.' " *See* Black's Law Dictionary 59; Merriam–Webster's Collegiate Dictionary 20. While an oath or affirmation may be made in private or before any lay person, it generally must be made before some public official authorized to accept such a statement in order to have any legal effect. *See Commonwealth v. Jones*, 245 Pa.Super. 487, 369 A.2d 733, 734–35 (1977) ("It is generally recognized . . . that for legal purposes verification means confirmation of the truth of a statement by oath or affirmation" and therefore, to verify inventory of items seized based on a search warrant, police officer must swear or affirm to correctness of inventory before the judge or magistrate who issued the warrant.). Therefore, applying the definition provided for "verified" in the Statutory Construction Act, we conclude that the General Assembly intended the term "duly verified" in section 1701 to mean that

to the penalties of 18 Pa.C.S. § 4904. *See* Pa. R.C.P. 76 cmt. (1981). The Rules Committee of this Court subsequently incorporated this concept into the Rules of Appellate Procedure and the Rules of Civil Procedure. *See id.* (explaining that in 1981 the definitions of verified and affidavit in the Rules of Civil Procedure were "enlarged to include two alternatives: . . . (1) the usual oath or affirmation before a notary or other person authorized to administer oaths or (2) a statement by the signer that it is made subject to the penalties of 18 Pa.C.S. § 4904. . . ."). In contrast, the General Assembly did not incorporate this concept into the Statutory Construction Act, which continues to define "verified" as a writing supported by an oath or affirmation and an "affidavit" as a written statement sworn to or affirmed before an officer authorized to administer oaths or accept affirmations. *See* 1 Pa.C.S. § 1991.

the three electors bringing the Petition to Open have confirmed the averments in the Petition by means of an oath or affirmation before a notary public or similar public official.[20]

Significantly, previous decisions from this Court and the Commonwealth Court also support our conclusion that the term verified in section 1701 means that a Petition to Open must be verified by means of an oath or affirmation before a notary public or another Commonwealth official authorized to accept oaths or affirmations. In *In re Appeal of Henry*, a candidate argued that multiple petitions seeking a recanvass of voting machines filed pursuant to section 1702 of the Election Code, which contains language identical to that in section 1701,[21] were invalid because they were not properly verified. *See In re Appeal of Henry*, 504 Pa. 593, 475 A.2d 1325, 1327–28 (1984). Specifically, the candidate contended that in certain petitions, the electors did not sign their affidavits before a notary public, and in other petitions, the notary public did not give the electors an oath when they signed their affidavits.[22] *See id.* In considering these challenges, we found that the trial court properly dismissed the petitions concerning four election districts where the evidence estab-

---

**20.** Such a reading is also consistent with other provisions of the Election Code concerning election challenges which indicate a petition challenging an election needs to be verified by means of an affidavit. *See* 25 P.S. § 3154 ("Whenever it shall appear that there is a discrepancy in the returns of any election district, or, upon petition of three voters of any district, *verified by affidavit,* that an error ... has been committed therein" the county election board shall recanvass the votes cast during the election.) (emphasis added); *id.* § 3457 (stating that where electors wish to contest an election, they must do so by means of a petition verified by their affidavits).

**21.** While section 1702 concerns petitions for a recanvass voting machines, it states, like section 1701, that a petition for a recanvass must be "duly verified" by three electors. 25 P.S. § 3262.

**22.** The Statutory Construction Act, which as noted above applies to the provisions of the Election Code, defines an affidavit as "[a] statement in writing of a fact or facts signed by the party making it, sworn to or affirmed before an officer ... authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is to or may be taken, and officially certified to in the case of an officer under his seal of office." 1 Pa.C.S. § 1991. Thus, an affidavit confirms the fact that an elector has verified a petition by means of an oath or affirmation.

lished that the electors did not sign their affidavits before a notary public. *See id.* at 1327. On the other hand, we determined that the trial court should not have dismissed the other petitions because the notary public "through oversight, neglected to administer the oath to the [electors]" before they signed their affidavits. *Id.* We stated that "[t]he omission or neglect in not administering the oath was that of the notary public, not that of the [electors] . . . [and we could] see no good reason why they should suffer as a result." *Id.* at 1328. Accordingly, we determined that a petition for a recanvass must be dismissed where the *electors* make a mistake in verifying the petition, but not if the mistake is that of the notary public. *See id.* at 1327–1328; *see also In re Opening of Ballot Boxes, Montour County,* 553 Pa. 207, 718 A.2d 774, 775 (1998) (finding that in *Henry,* we *only* permitted certain verification mistakes to be cured because they were the notary public's fault).

The Commonwealth Court similarly addressed the section 1701 verification requirement in *Giacobello v. Bd. of Elections of Borough of Mount Union, County of Huntingdon,* 14 Pa.Cmwlth. 376, 322 A.2d 429 (1974). In that case, the Commonwealth Court concluded that the trial court had properly dismissed a Petition to Open because the three electors who signed the Petition "did not appear personally before the Justice of the Peace to take the affidavit, nor was any oath administered to them by the said Justice." *Id.* at 430. The Commonwealth Court acknowledged that the General Assembly had made the procedure to open ballot boxes relatively easy, but noted that it had also included the verification requirement, no doubt because it "felt it necessary to require some basis for the opening of boxes to prevent the filing of Petitions for the sole purpose of indulging in a 'fishing expedition' ". *Id.* at 431 (citing to *Giacobello* Trial Ct. Op.).

Our decision in *Henry* and the Commonwealth Court's decision in *Giacobello* therefore provide further support for the conclusion that electors must verify a petition to recanvass or a Petition to Open by means of an oath or affirmation before a notary or similar official, *i.e.,* pursuant to an affidavit,

*see supra* n. 19. *See In re Appeal of Henry,* 475 A.2d at 1327–1328; *Giacobello,* 322 A.2d at 430–31. Although neither the *Henry* court nor the *Giacobello* court directly addressed whether a petition for a recanvass or a Petition to Open could be verified by any other means than an affidavit, both courts clearly proceeded on the understanding that the Election Code requires no less than an affidavit and thus, merely asked whether or not the electors at issue had, in fact, verified their petitions by swearing or affirming to the truth of the statements in the petitions before a notary public. *See In re Appeal of Henry,* 475 A.2d at 1327–28; *Giacobello,* 322 A.2d at 430–31.

Based on this case law as well as the definition for verification in the Statutory Construction Act, we hold that the electors who signed Fisher's nine Petitions to Open were required to verify them by means of an oath or affirmation before a notary or other public official. Furthermore, as this Court has made clear that an improper verification is "a jurisdictional defect that [cannot] be cured," we hold that Fisher's nine Petitions to Open must be dismissed. *In re Opening of Ballot Boxes, Montour County,* 718 A.2d at 775 ("it has been consistently held for more than eighty years that a recount petition not verified in accordance with the statutory requirements does not properly invoke the jurisdiction of the common pleas court and should be dismissed").

Accordingly, although we find that the Board improperly certified the election results before the expiration of the fifth day after it completed its official count, we nevertheless hold that the results of that certification may stand because Fisher's nine Petitions to Open are invalid and there are no other outstanding Petitions to Open that would require that the Board's certification of Matheny as the winner of the election be changed.[23] The Commonwealth Court's order directing the trial court to grant Fisher's nine Petitions to Open is reversed.

**23.** While Matheny filed three Petitions to Open on December 1st, she has indicated that she will withdraw these Petitions if Fisher's nine Petitions to Open are dismissed, *see supra* n. 6.