### Brian RINALDI

v.

### Joseph FERRETT and Old Forge Borough Council.

### Appeal of: Joseph Ferrett.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2007.
Decided Dec. 21, 2007.
Publication Ordered Jan. 11, 2008.

---

Brian J. Cali, Dunmore, for appellant.

Christopher P. Cullen, Scranton, for appellee.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

Joseph Ferrett, a candidate for a seat on the Council of Old Forge Borough in Lackawanna County, appeals from orders of the Court of Common Pleas, which granted the petition of Brian Rinaldi, a write-in candidate for the same Council seat. Common pleas directed the County Voter Registration Office to count 111 write-in votes, causing Rinaldi to overtake Ferrett in the municipal election of November 6, 2007, and directed certification of Rinaldi as the winner of the disputed Council seat. We confront two issues: whether Rinaldi's petition, one not in conformance with the requirements under the Election Code[1] for requesting a recount or asserting an

---

1. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591.

election contest, should have been quashed, and if not, whether the write-in votes were properly counted despite the voters' failure to blacken the oval on the ballot corresponding to the line on which voters wrote-in Rinaldi's name. We conclude that Rinaldi's petition is fatally defective and should have been quashed. We address the second issue only in anticipation of possible further appeal.

In the election of November 2007, Ferrett, a nominee in the primary election, appeared on the ballot for one of four seats on the Borough Council. Rinaldi campaigned as a write-in candidate for a Council seat. The County used a form of paper ballot designed to be read electronically and to this end ballot instructions directed the voter to completely blacken the oval next to the chosen candidate. The directions accompanying the ballot directed, in pertinent part, as follows: "To vote for a person not on the ballot, manually WRITE–IN his or her name in the space provided, then blacken the corresponding OVAL." (emphasis in original). Three days after the election, on November 9, 2007, as called for in Section 1404 of the Code, *as amended,* 25 P.S. 3154(a), employees at the County Voter Registration Office publicly computed and canvassed the election returns. According to Rinaldi's petition, he and two others, Russell Rinaldi and James Peperno, witnessed the computation and observed election officials set aside 111 ballots on which voters had indicated a write-in vote for Rinaldi. At the completion of the computation, the election officials announced that Ferrett received 1355 votes and Rinaldi received 1277 votes.

On November 14, Rinaldi filed the instant petition, seeking to have the 111 uncounted write-in votes counted in his favor. Common pleas convened a two-judge panel, announcing that the panel would function concurrently as a board of election and as the court, to hear argument on the petition. Initially, Rinaldi's attorney argued the matter on Friday, November 16, in the absence of opposing counsel, but the court, one of the two judges having recused in the meantime, heard reargument from both parties on Monday, November 19. At the second argument, counsel representing the Republican Party also appeared and was heard without benefit of party status or leave to intervene. Republican Party counsel objected to the petition on the ground that it failed to identify a provision in the Election Code authorizing the relief sought and did not comply with the Code's requirements regarding recounts or election contests. The following day, common pleas granted Rinaldi's petition, directed that all 111 votes be counted and that the voter registration office certify Rinaldi as the winner. The trial court opinion did not address the procedural issue regarding the petition. In addressing the merits, the court relied on the decision of the Supreme Court in *Shambach v. Bickhart,* 577 Pa. 384, 845 A.2d 793 (2004) to opine that, inasmuch as the relevant Code provision does not explicitly prohibit counting votes lacking a fully blackened oval, the ballots adequately expressed the intent of the voter and should be counted. Following entry of the orders, Ferrett filed the present appeal.

On appeal, Ferrett contends that Rinaldi's petition to review specific ballots containing write-in votes is not an action in conformance with the Election Code and, thus the judges, either acting as the board of elections or as the court of common pleas, lacked jurisdiction to consider his request. On the merits, Ferrett contends that, in counting the ballots on which the voters failed to blacken the appropriate oval as directed, *common pleas inappropriately overlooked a defect that rendered the ballots invalid under Section 1112–*

A(b)(3) of the Election Code, added by the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.12(b)(3).[2]

 In considering the jurisdictional objection to Rinaldi's petition, we note the procedures and associated requirements provided in the Election Code for challenging the accuracy of a vote count. First, a request to the board of election for a recount may be made pursuant to Section 1404(e) of the Code, 25 P.S. § 3154(e), which particularly pertinent to the present case, calls for filing of a petition by at least three voters who verify by affidavit that an error has been committed in the computation of the returns.[3] Second, Section

---

2. Section 1112–A(b)(3) of the Election Code, pertaining to districts using "an electronic voting system which utilizes paper ballots or ballot cards to register the votes," provides:

> At all other elections, the voter shall vote for the candidates of his choice for each office to be filled, according to the number of persons to be voted for by him for each office, by making a cross (x) or check (v) mark or by making a punch or mark sense mark in the square opposite the name of the candidate, or he may so mark the write-in position provided on the ballot for the particular office and, in the space provided therefor on the ballot and/or ballot envelope, write the identification of the office in question and the name of any person not already printed on the ballot for that office, and such mark and written insertion shall count as a vote for that person for such office.

25 P.S. § 3031.12(b)(3).

3. Section 1404(e) states, in pertinent part, as follows:

> (e) Whenever it shall appear that there is a discrepancy in the returns of any election district, or, *upon petition of three voters of any district, verified by affidavit, that an error, although not apparent on the face of the returns, has been committed therein,* or of its own motion, or under subsection (g) [pertaining to recounts ordered by the secretary of state], the county board shall at any time prior to the completion of the computation of all of the returns for the county, summon the election officers of the district, and said officers, in the presence of said board, shall conduct a recount or recanvass of all ballots cast.
>
> ....
>
> (3) In a county in which an election district uses an electronic voting system utilizing paper ballots, all of the following apply:
> (i) The county board shall recount all ballots using manual, mechanical or electronic

devices of a different type used for the specific election.
> (ii) All ballots containing overvotes shall be counted manually.

25 P.S. § 3154(e) (emphasis added). Following the computation of the returns or a recount/recanvass as provided for in subsection (e), the board must certify the returns as directed in subsection (f), in pertinent part, as follows:

> (f) As the returns from each election district are read, computed and found to be correct or corrected as aforesaid, they shall be recorded on the blanks prepared for the purpose until all the returns from the various election districts which are entitled to be counted shall have been duly recorded, when they shall be added together, announced and attested by the clerks who made and computed the entries respectively and signed by the members of the county board. Returns under this subsection shall be considered unofficial for five (5) days. The county board shall submit the unofficial returns to the Secretary of the Commonwealth by five o'clock P.M. on the Tuesday following the election.... At the expiration of five (5) days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act, or upon the completion of the recount or recanvass if a petition therefor has been filed within five (5) days after the completion of the computation of votes, the county board shall certify the returns so computed ...' unless upon appeals taken from any decision, the court of common pleas shall have directed any returns to be revised, or unless in case of a recount, errors in the said returns shall have been found, in which case said returns shall be revised, corrected and certified accordingly. The county board shall thereupon, in the case of elections, issue certificates of election to the successful candidates for all ... offices to be filled....

1407(a) of the Code, 25 P.S. § 3157(a), provides for an appeal to court by a "person aggrieved by any *order or decision of any county board* regarding the computation or canvassing of the returns." (emphasis added). An appeal under Section 1407 must be filed within two days of the order or decision.[4] Third, a request may be made to common pleas for a recount/recanvass of the votes. Such a request must be made within five days after completion of the board's computation and, most relevant to the present case, must be made by a petition verified by three qualified electors of the district and accompanied by a cash deposit or bond.[5] Lastly, if the

25 P.S. § 3154(f).

4. Section 1407(b) affords the court broad power to fashion relief, as follows:

> (b) The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require. Pending such appeal, the county board shall suspend any official certification of the votes cast in such election district. None of the orders or decisions of either the county board or the court of common pleas on appeal shall be deemed a final adjudication regarding the results of any primary or election, so as to preclude any contest thereof. No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section. . . .

25 P.S. § 3157(b).

5. A petition for recount directed to common pleas is subject to the requirements of Sections 1701–1703 of the Code, 25 P.S. § 3261–3263. In pertinent part, Section 1701 provides:

> (a) Except as set forth in subsection (a.1) [pertaining to recount/recanvass by order of the secretary], *the court of common pleas, or a judge thereof*, of the county in which any election district is located in which ballots were used, *shall open the ballot box of such election district* used at any general, municipal, special or primary election held therein, *and cause the entire vote thereof to be correctly counted by persons designated by such court or judge, if three qualified electors of the election district shall file, as hereinafter provided, a petition duly verified by them*, alleging that upon information which they consider reliable they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the computation of the votes cast for all offices or for any particular office or offices in such election district, or in the marking of the ballots, or otherwise in connection with such ballots. It shall not be necessary for the petitioners to specify in their petition the particular act of fraud or error which they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition.
>
> . . . .
>
> (b) *Every petition for the opening of a ballot box* under the provisions of this section *shall be* filed in the office of the prothonotary of the proper county, *accompanied by a deposit of cash in the amount of fifty ($50.00) dollars, or by a bond signed by the petitioners as principals and by a corporate surety* to be approved by the court, in the amount of one hundred ($100.00) dollars. . . .

25 P.S. § 3261 (emphasis added). In addition, Section 1703, in pertinent part, directs:

> (a)(1) Any petition to open a ballot box or to recanvass the votes on a voting machine or an electronic voting system pursuant to sections 1701 or 1702 shall be filed no later than five (5) days after the completion of the computational canvassing of all returns of the county by the county board. If any error or fraud is found the court shall grant the interested parties an additional five (5) days to file petitions requesting additional ballot boxes to be opened or voting machines or electronic voting systems to be recanvassed.

25 P.S. § 3263(a)(1). Further, Section 1703 provides that if upon presentation of a petition to open a ballot box, the court discovers error, "the court shall correct, compute and certify to the county board the votes justly, regardless of any fraudulent or erroneous entries made by the election officers thereof, and the county board shall correct accordingly any entries previously made in the returns of the county being prepared by it, or which have been prepared and not yet certified." 25 P.S. § 3263(a)(2).

returns have been officially certified, the only manner in which a complainant may challenge the election result is by way of an election contest in the court of common pleas. *See In re 2003 General Election for Office of Prothonotary of Washington County, Appeal of Matheny,* 578 Pa. 3, 12, 849 A.2d 230, 235 (2004). In the present case, concerning a seat on borough council, the Code classifies the contest as one of the fifth class under Section 1711, 25 P.S. § 3291. Section 1751, 25 P.S. § 3431 requires that such a contest be upon petition of twenty registered electors, and Section 1757, 25 P.S. § 3457, requires that those petitioners be persons who voted at the election under contest, five of whom attest, by affidavit taken and subscribed before a person authorized to administer oaths, that they believe the facts stated in the petition are true, that the election was illegal, the return thereof is not correct and that the contest is made in good faith. Section 1759, 25 P.S. § 3459, requires that the petitioners file a bond, within five days after filing their petition, in such sum as the court shall designate. Section 1756, 25 P.S. § 3456, mandates that the petition be filed within twenty days after the day of the election and "concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is illegal...."

■ Jurisdiction to resolve election disputes is not of common law origin but is founded entirely upon statute and cannot be extended beyond the limits defined by the General Assembly. *See In re Granting Malt Beverage Licenses,* 331 Pa. 536, 538, 1 A.2d 670, 671 (1938). *See also Gunnett v. Trout,* 380 Pa. 504, 509, 112 A.2d 333, 336 (1955); *Tartaglione v. Graham,* 132 Pa.Cmwlth. 578, 573 A.2d 679, 680 n. 3 (1990); *Reese v. Bd. of Elections of Lancaster County,* 10 Pa.Cmwlth. 448, 308 A.2d 154, 158 (1973). Hence, the statutory

provisions set forth at length above constitute the exclusive means for challenging the accuracy of election results. Moreover, well-established case law dictates strict adherence to the statutory requirements for pursuing any of the avenues set forth above.

In *Giacobello v. Bd. of Elections Borough of Mount Union,* 14 Pa.Cmwlth. 376, 322 A.2d 429 (1974), the court strictly enforced the statutory requirements for pursuing a challenge to election returns by a petition to common pleas for a recount. The court ruled that a petition unaccompanied by the requisite verifications of three qualified electors constituted a defect fatal to jurisdiction over the petition and opined as follows:

> The effect of the type of irregularity which exists in this case was considered in the case of *North Union Township Election Case,* 250 Pa. 98, [95 A. 421 (1915)], in which case one of the persons signing and swearing to the Petition for the contest was not a qualified elector of the election district. The court there held that the Petition was not verified as required by the Act of Assembly, and the Court acquired no jurisdiction of the proceeding, stating that an affidavit of the required number of qualified electors is essentially necessary to give jurisdiction.
>
> . . . .
>
> To conclude [otherwise] is to re-write a portion of the Statute by the Court and to erode the effect of the statutory provision by an unwarranted invasion by the judiciary into the legislative field.

322 A.2d at 430–31. Similarly, in *In re Reading School Board Election, Appeal of Pagano,* 535 Pa. 32, 634 A.2d 170 (1993), our Supreme Court ruled that a petition for recount filed with the county board of elections lacking the required verifications of three electors was fatally flawed so as

to deprive the board of jurisdiction to entertain the request. More recently, our Supreme Court held that electors who sign a petition for recount filed to common pleas must verify the averments by means of an oath or affirmation before a notary or other public official, i.e., pursuant to an affidavit, and the Court reiterated that an improper verification is "a jurisdictional defect that [cannot] be cured." *In re 2003 General Election for the Office of Prothonotary of Washington County, Appeal of Matheny*, 578 Pa. at 19, 849 A.2d at 240 *citing, In re Opening of Ballot Boxes, Montour County*, 553 Pa. 207, 213, 718 A.2d 774, 777 (1998) ("it has been consistently held for more than eighty years that a recount petition not verified in accordance with the statutory requirements does not properly invoke the jurisdiction of the common pleas court and should be dismissed.").

Rinaldi's petition was addressed to the board of elections, not to the court of common pleas. Therefore, we consider it to be a request for a recount pursuant to Section 1404(e) of the Code, 25 P.S. § 3154(e).[6] However, it is accompanied by unnotarized verifications by only Rinaldi himself and James Peperno. Thus, the petition is flawed in the number of elector verifications and in the form of those verifications. Hence, we conclude that the petition does not satisfy the procedural requirements attached to either of these avenues for obtaining a recount.

Nonetheless, Rinaldi claims that these procedural failures are irrelevant because he was not seeking a recount, nor was he attempting to invoke any of the Election Code provisions described above, but was simply seeking to enforce the substantive provisions of Section 1112–A(b)(3) of the Code through a self-fashioned procedure. Since the Code does not provide for the form of petition he filed, he reasons that there are no associated procedural requirements. We cannot accept this argument. As noted above, our jurisdictional case law informs of two principles, both relevant here. First, only those procedures specified by the Code invoke the jurisdiction of the board or court and, second, those provisions are strictly construed and such jurisdiction will attach only if they are followed in all respects. Without the first principle, the second would be rendered meaningless. Consequently, Rinaldi's petition was fatally defective and the tribunal, whether acting as a board of elections or as the court, was without jurisdiction to entertain the petition.[7]

■ As for the merits of this dispute, *i.e.*, whether the failure to blacken the oval

---

6. The petition asks the board to count certain ballots which had been set aside and not counted. This plainly cannot be considered an appeal to common pleas from an *"order or decision of any county board,"* and, in any event, was filed more than two days after the setting aside and failure to count the *111* ballots, and prior to the certification of the results. A recount/recanvass addressed to common pleas must be verified by three qualified electors and accompanied by a cash deposit or bond, neither of which requirements was met here. Similarly, a contest addressed to common pleas must be on the petition of twenty registered electors and verified by five of them.

7. Inasmuch as the failure to strictly follow the procedural requirements under the Election Code renders Rinaldi's petition fatally flawed so as to deprive common pleas of jurisdiction, we do not need to decide whether an objection on this ground was preserved. We note nevertheless that, while the objection was asserted before common pleas by counsel for the Republican Party (a nonparty) rather than Ferrett, given the expedited proceedings attending the resolution of election disputes, we would consider the objection sufficiently preserved.

corresponding to a write-in vote renders the vote invalid and uncountable regardless of the clear expression of intent to cast a vote for the named write-in candidate, we conclude that common pleas appropriately relied on the rationale set forth in *Shambach*, 577 Pa. 384, 845 A.2d 793. In *Shambach*, the Court noted the general principles that "longstanding and overriding policy" calls for protection of the elective franchise and that, while election laws must be strictly construed to prevent fraud, some voting requirements should be construed liberally in favor of the right to vote so that minor irregularities in casting a vote result in striking that vote only if there exists compelling reason. *Id.* at 392, 845 A.2d at 798. In *Shambach*, the Court considered whether the language in Section 1112–A(b)(3), directing that a write-in vote may be cast for "any person not already on the ballot," rendered invalid those ballots on which the voter had cast a write-in vote for a candidate named on the ballot. The Court noted the distinction between the language in Section 1112–A(b)(3), 25 P.S. § 3031.12(b)(3), (pertaining to paper ballots counted electronically), which directs that a write-in vote not be cast for a person already listed on the ballot, and the language in Section 1216(e), 25 P.S. § 3056(e), (pertaining to votes cast on a voting machine), which explicitly prohibits counting a write-in vote for a person already named on the ballot. The Court stated, "we refuse to read an all-out prohibition into Section 1112–A(b)(3) where one is not explicitly required, particularly given the Commonwealth's longstanding policy to protect the elective franchise. Furthermore, we simply do not agree that the reasons for Section 1216(e)'s bar [safeguarding against double voting] are present with respect to Section 1112–A(b)(3) [where the use of a paper ballot makes ascertainment of double voting easy as compared to when a voting machine is used]." *Id.* at 398, 845 A.2d at 802. Finally, the Court held "that Section 1112–A(b)(3), . . . must be liberally construed to protect voters' right to vote, and, therefore, write-in votes cast for listed candidates may be counted so long as the voter's intent is clear and there is no sign of fraud." *Id.* at 397, 845 A.2d at 802. In the present case, where voter intent is clear and there is no sign of fraud, we conclude that, absent an express statutory prohibition, the rationale favoring liberal construction would allow counting of the ballots despite the lack of a fully blackened oval. Therefore, had we reached the merits, we would have affirmed.

However, for the reasons stated herein, we vacate and remand with directions to quash Rinaldi's petition for review of the write-in votes.

### ORDER

AND NOW, this 21st day of December, 2007, the order of the Court of Common Pleas of Lackawanna County in the above captioned matter is hereby VACATED. This matter is hereby REMANDED for an order quashing the petition by Brian Rinaldi for review of write-in votes.

Jurisdiction relinquished.